# ·ADAMS EXPRESS COMPANY *v.* CRONINGER.

ERROR TO THE CIRCUIT COURT OF KENTON COUNTY, STATE
OF KENTUCKY.

No. 18.  Argued March 13, 1912; reargued October 23, 1912.—Decided
January 6, 1913.

The constitutional power of Congress to regulate commerce among
the States and with foreign nations comprehends power to regulate
contracts between shipper· and carrier of shipments in such com-
. merce in regard to liability for loss or damage to articles carried.

Until Congress has legislated upon that subject, the liability of a car-
rier, although engaged in interstate commerce, for loss or damage to
. .property carried, may be regulated by law of the State.

Since the decisions of this court in *Chicago, Milwaukee & St. Paul
Railway* v. *Solan,* 169 U. S. 133, and *Pennsylvania Railroad* v.
*Hughes,* 191 U. S. 477, Congress has by § 20 of the Hepburn Act of
June 29, 1906, 34 Stat. 584, c. 3591, known as the Carmack amend-
ment, legislated directly upon the carrier's liability for loss of and
. damage to interstate shipments, and this legislation supersedes all
regulations and policies of a particular State upon the same subject.

Only the silence of Congress authorizes the exercise of the police power
of the State upon the subject of contracts with carriers for inter-
state shipments, and when Congress exercises its authority the
regulating power of the State is at an end.

In enacting the Carmack amendment it is evident that Congress in-
tended to adopt a uniform rule as to the liability imposed upon
interstate carriers by state regulations of bills of lading and to re-
lieve such contracts from the diverse regulation to which they had
· theretofore been subject.

A *proviso* reserving certain rights of action will not be construed as
nullifying the statute itself and maintaining the existing .confusion
which it was the purpose of Congress to put an end to; and so *held*
that the *proviso* in the Carmack amendment related to remedies
under existing Federal law at the time of this action and not to any
state law.

A rational interpretation will be given to a statute and a *proviso* and
not one by which the statute will, through the *proviso*, destroy itself.

A· common carrier cannot exempt himself from liability for his own

negligence or that of his employés, but the rigor of this rule may be modified by a fair, reasonable and just agreement with the shipper which does not include exemption from such negligence; and the right to receive compensation commensurate with the risk involves the right to agree upon rates proportionate with the value of the property transported.

An interstate carrier may, by a fair, open and reasonable agreement, limit the amount recoverable by the shipper to an agreed value made for the purpose of obtaining the lower of two or more rates proportioned to the amount of risk.

A limitation of liability based upon an agreed value to obtain a lower rate does not conflict with any sound principle of public policy; and it is not conformable to plain principles of justice that a shipper may understate value in order to reduce the rate and then recover a larger value in case of loss.

The provisions of the Carmack amendment are not violated by a plain provision in a bill of lading basing the charges on value of article transported and charging higher rates for increasing liability as value is declared; and so *held* as to express rates filed with the Interstate Commerce Commission.

This was an action in the Circuit Court of Kenton County, Kentucky, against the Express Company to recover the full market value of a small package containing a diamond ring which was delivered by the plaintiff below to the Express Company at its office in Cincinnati, Ohio, consigned to J. W. Clendenning at Augusta, Georgia. The package was never delivered.

The Express Company made defense by answer. The plaintiff demurred to the answer as not containing a defense, which demurrer was sustained. The company declined to further plead, whereupon the Circuit Court gave judgment for the sum of $137.52, being the full value of the ring and interest. A writ of error was sued out from this court to the Circuit Court of Kenton County, that being the highest court of the State in which a decision could be had.

The answer and accompanying exhibit were in substance as follows:

That the defendant was an express company engaged in interstate commerce within the provisions of the act of Congress of June 29, 1906; that in obedience to that act it had duly filed with the Interstate Commerce Commission schedules showing its rates and charges from Cincinnati to Augusta, Georgia, which schedules showed that its rates and charges, when the value of the property to be carried was in excess of fifty dollars, were graduated reasonably, according to the value, and that the lawful rate upon the package of the plaintiff from Cincinnati to Augusta was twenty-five cents if the value was fifty dollars or less, and was fifty-five cents if its value was one hundred and twenty-five dollars.

It is averred that the plaintiff knew that the charges upon the package shipped were based upon the value of the shipment, and that it (the defendant) required that the value should be declared by the shipper, and that if he did not disclose and declare the value when he delivered the shipment to it at Cincinnati for transportation to Augusta, the rate charged would be based upon a valuation of fifty dollars. It is then alleged that the package so delivered was sealed and that defendant did not know the contents or value, and that if it had it would not have received it for carriage for less than the lawful published rate of fifty-five cents. The receipt or bill of lading issued shows no value, but contains a stipulation in these words:

"In consideration of the rate charged for carrying said property, which is regulated by the value thereof and is based upon a valuation of not exceeding fifty dollars unless a greater value is declared, the shipper agrees that the value of said property is not more than fifty dollars, unless a greater value is stated herein, and that the company shall not be liable in any event for more than the value so stated, nor for more than fifty dollars if no value is stated herein."

*Mr. Lawrence Maxwell,* with whom *Mr. Joseph S. Graydon* was on the brief, for plaintiff in error:

The judgment of the state court denies effect to the general purpose and to specific provisions of the Interstate Commerce Acts, and deprives defendant of rights secured thereby. *New Haven R. R.* v. *Interstate Com. Comm.,* 200 U. S. 361, 395; *Armour Packing Co.* v. *United States,* 209 U. S. 56, 72; *Texas & Pacific Railway Co.* v. *Abilene Cotton Oil Co.,* 204 U. S. 426; *Texas & Pacific Ry. Co.* v. *Mugg,* 202 U. S. 242; *Louisville &c. Nashville Railroad Co.* v. *Mottley,* 219 U. S. 467; *Union Pacific Ry. Co.* v. *Goodridge,* 149 U. S. 690; *Baltimore & Ohio R. R. Co.* v. *Pitcairn Coal Company,* 215 U. S. 481; *Melody* v. *Great Northern Ry. Co.,* 25 S. Dak. 606.

A public policy of the United States of uniform application is necessarily established by the acts to regulate commerce, which is inconsistent with the power formerly existing in the States to compel an interstate carrier to answer for more than the amount on which the rate was based to a shipper who has secured an illegally low rate.

Initial carriers are not subject to the liability imposed by varying state laws for loss or damage to interstate shipments, because Congress has assumed possession of the domain of such liability under the Carmack amendment of June 29, 1906.

*Pennsylvania Railroad Co.* v. *Hughes,* 191 U. S. 477, was affirmed on authority of *Chi., Mil. &c. Ry. Co.* v. *Solan,* 169 U. S. 133, but numerous changes have been made in the Interstate Commerce Act since then as both the Elkins Act and the Carmack amendment are subsequent to the transactions involved in those cases.

The main purpose of the Carmack amendment was to give the holder of the bill of lading, which the carrier to whom the goods were delivered for transportation is required to issue, a right of action against such carrier for loss caused by connecting carriers, with a right in

the initial carrier to recover over against the connecting carrier. *Atlantic Coast Line* v. *Riverside Mills*, 219 U. S. 186.

The right thus created was not a right unknown to existing law. *Mo., Kas. &c. Tex. Ry. Co.* v. *McCann*, 174 U. S. 580; *Southern Pacific Ry. Co.* v. *Crenshaw*, 63 S. E. Rep. 685.

State action is inhibited when Congress has spoken. *Northern Pac. Ry. Co.* v. *Washington*, 222 U. S. 370; *Southern Ry. Co.* v. *Reid*, 222 U. S. 424; *Southern Ry. Co.* v. *Reid & Beam*, 222 U. S. 444.

The proviso cannot be construed so as to leave in existence rights of action under state law which apply to the same subject-matter, for to admit that the matter with which Congress dealt remained subject to state power, is to cause the act of Congress to destroy itself. *Northern Pacific Ry. Co.* v. *Washington*, 222 U. S. 370, 378; *Southern Pacific Co.* v. *Crenshaw*, 63 S. E. Rep. 865.

Defendant's liability under § 20 of the Interstate Commerce Act does not exceed fifty dollars, and the judgment of the state court for more than that amount deprives defendant of a Federal right. *Pennsylvania R. R. Co.* v. *Hughes*, 191 U. S. 477, 486; *Hart* v. *Penn. R. R. Co.*, 112 U. S. 331.

At common law, while the right of the carrier to inquire as to the value of a package in order to determine his freight was always recognized, it was held in the absence of such inquiry, that the shipper was under no obligation to disclose the value. But as early as 11 Geo. IV, and 1 Wm. IV, c. 68, it was provided by statute in England that a carrier should not be liable beyond ten pounds unless at the time of making the shipment, the shipper, if the goods were of greater value, should so declare to the carrier, and pay accordingly. And see *Gibbon* v. *Paynton*, 4 Burr. 2298 (1769); *Clay* v. *Willan*, 1 H. Bl. 298 (1789); *Izett* v. *Mountain*, 4 East, 371 (1803); *Batson* v. *Donovan*, 4 B. & Ald.

21 (1820); *Hinton* v. *Dibbin,* 2 Ad. & E. (N. S.) 646; *Kidd* v. *Greenwich Ins. Co.,* 35 Fed. Rep. 351; *Calderon* v. *Atlas S. S. Co.,* 64 Fed. Rep. 874; *Calderon* v. *Atlas S. S. Co.,* 69 Fed. Rep. 574; *The Kensington,* 88 Fed. Rep. 331; *Jennings* v. *Smith,* 106 Fed. Rep. 139; *Saunders* v. *Southern Ry.,* 128 Fed. Rep. 15; *Macfarlane* v. *Adams Express Co.,* 137 Fed. Rep. 982; *Missouri &c. Ry. of Texas* v. *Patrick,* 144 Fed. Rep. 632; *Taylor* v. *Weir,* 162 Fed. Rep. 585; *Blackwell* v. *Southern Pac. Co.,* 184 Fed. Rep. 489; *Pierce* Co. v. *Wells Fargo Co.,* 189 Fed. Rep. 561; *Liverpool Steam Co.* v. *Phenix Ins. Co.,* 129 U. S. 397, 442; *Calderon* v. *Atlas S. S. Co.,* 170 U. S. 272; *The Kensington,* 183 U. S. 263; *Alair* v. *Railroad Company,* 53 Minnesota, 160; *Douglas Co.* v. *Railway Co.,* 62 Minnesota, 288; *O'Malley* v. *Railway Co.,* 86 Minnesota, 380; *Loeser* v. *Chicago, M. & St. P. Ry. Co.,* 94 Wisconsin, 571; *Ullman* v. *Chicago &c. Ry. Co.,* 112 Wisconsin, 150; *Baltimore & Ohio Ry. Co.* v. *Hubbard,* 72 Oh. St. 302.

See also, for cases under the Carmack amendment, *Bernard* v. *Adams Express Co.,* 205 Massachusetts, 254; *Greenwald* v. *Barrett,* 199 N. Y. 170; *Travis* v. *Wells, Fargo & Co.,* 79 N. J. L. 83; *P. C. C. & St. L. Ry. Co.* v. *Mitchell,* 91 N. E. Rep. 735; *Larsen* v. *Oregon Short Line,* 110 Pac. Rep. 983.

Plaintiff cannot maintain the action because it is founded on a transaction on his part which is declared to be a fraud on the defendant and a public offense by acts of Congress.

Not only does the judgment of the Kentucky court render nugatory the general purposes of the Interstate Commerce Acts, but it was based on a transaction expressly prohibited and made a misdemeanor by § 10 of the act, and by the Elkins Act. *Armour Packing Company* v. *United States,* 209 U. S. 66, 69.

A transaction which constitutes a violation of these sections cannot be the basis of an action. *Ellison* v.

*Adams Express Co.,* 245 Illinois, 410; *Matter of Released Rates,* 13 I. C. C. Rep. 550. And see Conference Rulings of the Commission, Bulletin No. 5, April 1, 1911; *Frank v. Adams Express Co.,* Pitts. Leg. Jour., May 20, 1908, O. S. Vol. LV, N. S. XXXVIII (Common Pleas Court No. 1, Allegheny County).

*Mr. John Randolph Schindel,* with whom *Mr. Morison R. Waite* was on the brief, for defendant in error:

The contract embodied in the receipt was void under § 196 of the Kentucky constitution which provides that no common carrier shall be permitted to contract for relief from its common-law liability. *Southern Express Co. v. Fox,* 131 Kentucky, 257; *Adams Express Co. v. Walker,* 119 Kentucky, 121; *Louisville & N. R. Co. v. Frazee,* 24 Ky. L. Rep. 1273; *Ohio & M. R. Co. v. Tabor,* 98 Kentucky, 503; *Cincinnati, N. O. & T. P. R. Co. v. Graves,* 21 Ky. L. Rep. 684; *Illinois C. R. Co. v. Radford,* 23 Ky. L. Rep. 886.

The judgment of the state court did not deprive the defendant of any right, privilege, or immunity secured by the Interstate Commerce Act.

Section 196 of the Kentucky constitution deals with the right of a common carrier to relieve itself from its liability for the acts of its connecting carriers, who, in effect, are made its agents instead of the agents of the shipper.

The provisions of the act relied upon deal with two subjects-matter: rates and liability of the initial carrier for losses caused by connecting carriers. The subject-matter of § 196 of the Kentucky constitution is not rates, and it does not deal with the right of a common carrier to limit its liability for the acts of its connecting lines. It deals solely and exclusively, and its subject-matter is confined to the right of a common carrier to contract for relief from its common-law liability, for its own acts. The Interstate Commerce Act does not deal with the same

subject-matter as this section of the Kentucky constitution; and a Kentucky court, having jurisdiction of the parties, was entitled to interpret and to apply that law as it understood it without regard to the Federal statutes.

For the purpose of the Interstate Commerce Act, see *Armour Packing Company* v. *United States*, 209 U. S. 56; *N. Y., N. H. & H. R. R.* v. *Int. Com. Comm.*, 200 U. S. 361; *Texas & Pacific Railway Co.* v. *Abilene Cotton Oil Company*, 204 U. S. 426; *Louis. & Nash. R. R. Co.* v. *Mottley*, 219 U. S. 467.

These sections of the act deal only with rates, and it cannot be said that Congress has legislated or attempted to legislate upon the subject dealt with by the state law. *Gulf, Colorado & Santa Fe Railway Company* v. *Hefley*, 158 U. S. 98, distinguished, as both the Federal and the state statutes dealt with the same subject-matter.

The state court had the right to administer the common law of Kentucky as it saw it, and unless the Congress of the United States has sought to prohibit a carrier engaged in interstate transportation from limiting, or to permit such a carrier to limit, its liability to a stipulated valuation, or has legislated upon that "precise" subject, the State of Kentucky may require common carriers although engaged in interstate commerce, to answer for the whole loss resulting from their negligence, whether there is a contract or not. *Pennsylvania Railroad Company* v. *Hughes*, 191 U. S. 477; *Chi., Mil. &c. Ry. Co.* v. *Solan*, 169 U. S. 133.

It was not the intention of Congress in prohibiting a common carrier from limiting its liability with respect to the obligations imposed by the Interstate Commerce Act, to wipe out every regulation made or upheld by the different States for the protection of their shippers. *Bernard* v. *Adams Express Co.*, 205 Massachusetts, 254, and *Greenwald* v. *Barrett*, 199 N. Y. 170.

The right of plaintiff to recover, even if the action was

founded on a transaction declared to be a public offense by an act of Congress, was a question of general common law and has been determined in his favor by the Kentucky court. *Railroad Company* v. *Hughes*, 191 U. S. 477, 486.

*Ellison* v. *Adams Express Co.*, 245 Illinois, 410, distinguished; and see *Adams Express Co.* v. *Walker*, 119 Kentucky, 121.

In this case the package was delivered to the express company without any inquiry or demand being made by the defendant to know its value or contents, and there was, therefore, no willful violation of the act. *Matter of Released Rates*, 13 I. C. C. Rep. 550–554.

MR. JUSTICE LURTON, after making the foregoing statement, delivered the opinion of the court.

The answer relies upon the act of Congress of June 29, 1906, being an act to amend the Interstate Commerce Act of 1887, as the only regulation applicable to an interstate shipment; and avers that the limitation of value, declared in its bill of lading, was valid and obligatory under that act. This defense was denied. This constitutes the Federal question and gives this court jurisdiction.

Under the law of Kentucky this contract, limiting the plaintiff's recovery to the agreed or declared value, was invalid, and the shipper was entitled to recover the actual value, "unless," as said in *Adams Express Company* v. *Walker*, 119 Kentucky, 121, 129, and affirmed in *Southern Express Company* v. *Fox and Logan*, 131 Kentucky, 257, "sufficient facts are shown, independently of the special contract, to avoid the contract for fraud or to create an estoppel at common law."

The question upon which the case must turn, is, whether the operation and effect of the contract for an interstate shipment, as shown by the receipt or bill of lading, is

governed by the local law of the State, or by the acts of Congress regulating interstate commerce.

That the constitutional power of Congress to regulate commerce among the States and with foreign nations comprehends power to regulate contracts between the shipper and the carrier of an interstate shipment by defining the liability of the carrier for loss, delay, injury or damage to such property, needs neither argument nor citation of authority.

But it is equally well settled that until Congress has legislated upon the subject, the liability of such a carrier, exercising its calling within a particular State, although engaged in the business of interstate commerce, for loss or damage to such property, may be regulated by the law of the State. Such regulations would fall within that large class of regulations which it is competent for a State to make in the absence of legislation by Congress, growing out of the territorial jurisdiction of the State over such carriers. and its duty and power to safeguard the general public against acts of misfeasance and nonfeasance committed within its limits, although interstate commerce may be indirectly affected: *Smith* v. *Alabama,* 124 U. S. 465; *New York &c. Railroad* v. *New York,* 165 U. S. 628; *Chicago, Milwaukee & St. P. Ry.* v. *Solan,* 169 U. S. 133, 137; *Richmond &c. Ry.* v. *Patterson Co.,* 169 U. S. 311; *Cleveland &c. Ry.* v. *Illinois,* 177 U. S. 514; *Pennsylvania Railroad* v. *Hughes,* 191 U. S. 477. In the *Solan Case,* cited above, it was said of such state legislation:

"They are not, in themselves, regulations of interstate commerce, although they control, in some degree, the conduct and the liability of those engaged in such commerce. So long as Congress has not legislated upon the particular subject, they are rather to be regarded as legislation in aid of such commerce, and as a rightful exercise of the police power of the State to regulate the relative rights and duties of all persons and corporations within its limits."

In that case the court upheld the validity of an Iowa statute which made void every "contract, receipt, rule or regulation, which shall exempt any railway from liability as a common carrier, which would exist had no contract, receipt, rule, or regulation been made or entered into."

The contract there involved was for transportation of cattle with a drover in charge, and the shipper had signed a contract limiting the liability to himself or the drover to $500 for injury to the person of the drover. Proof was offered that this limitation was the consideration for a reduced rate of transportation.

In *Pennsylvania Railroad* v. *Hughes*, 191 U. S. 477, 487, 491, there was involved a bill of lading in all essentials identical with the one here concerned, whereby it was stipulated that in consideration of a reduced rate of freight, the shipper should receive, in case of negligent loss, the agreed value declared in the receipt. The shipment was made in New York, where the stipulation was valid, to a point in Pennsylvania, where such a limitation was invalid. The loss occurred in the latter State, and the Supreme Court of the State upheld a judgment for the full value, declaring the limitation invalid as forbidden by the public policy of that State. That case came to this court upon the contention that the Pennsylvania court in refusing to limit the recovery to the valuation agreed upon had denied to the railroad company a right or privilege secured to it by the Interstate Commerce Law. But this court as to that said (p. 487):

"It may be assumed that under the broad power conferred upon Congress over interstate commerce as defined in repeated decisions of this court, it would be lawful for that body to make provision as to contracts for interstate carriage, permitting the carrier to limit its liability to a particular sum in consideration of lower freight rates for transportation. But upon examination of the terms

of the law relied upon we fail to find any such provision therein. The sections of the interstate commerce law relied upon by the learned counsel for plaintiff in error, 24 Stat. 379, 382; 25 U. S. Stat. 855, provide for equal facilities to shippers for the interchange of traffic; for non-discrimination in freight rates; for keeping schedules of rates open to public inspection; for posting the same in public places, with certain particulars as to charges, rules and regulations; for the publication of joint tariff rates for continuous transportation over one or more lines, to be made public when directed by the Interstate Commerce Commission; against advances in joint tariff rates except after ten days' notice to the commission; against reduction of joint tariff rates except after three days' like notice; making it unlawful for any party to a joint tariff to receive or demand a greater or less compensation for the transportation of property between points as to which a joint tariff is made different than is specified in the schedule filed with the commission; giving remedies for the enforcement of the foregoing provisions, and providing penalties for their violation; making it unlawful to prevent continuous carriage, and providing that no break of bulk, stoppage or interruption by the carrier, unless made in good faith for some necessary purpose without intention to evade the act, shall prevent the carriage of freights from being treated as one continuous carriage from the place of shipment to the place of destination.

"While under these provisions it may be said that Congress has made it obligatory to provide proper facilities for interstate carriage of freight, and has prevented carriers from obstructing continuous shipments on interstate lines, we look in vain for any regulation of the matter here in controversy. There is no sanction of agreements of this character limiting liability to stipulated valuations, and, until Congress shall legislate upon it, is there any

valid objection to the State enforcing its own regulations upon the subject, although it may to this extent indirectly affect interstate commerce contracts of carriage?"

In view of the decisions of this court in the two cases last referred to, we shall assume that this case is governed by them, unless the subsequent legislation of Congress is such as to indicate a purpose to bring contracts for interstate shipments under one uniform rule of law not subject to the varying policies and legislation of particular States.

The original Interstate Commerce Act of February 4, 1887, 24 Stat. 379, c. 104, was extensively amended by the act of June 29, 1906, 34 Stat. 584, c. 3591. We may pass by many of the changes and amendments made by the latter act as not decisive, and come at once to the far more important amendment made in § 20, an amendment bearing directly upon the carrier's liability or obligation under interstate contracts of shipment, and generally referred to as the Carmack amendment. For convenience of reference, it is set out in the margin.[1]

---

[1] That any common carrier, railroad or transportation company receiving property for transportation from a point in one State to a point in another State shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered, or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed: *Provided*, That nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law.

That the common carrier, railroad or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad or transportation company on whose line the loss, damage or injury shall have been sustained, the amount of such loss, damage, or injury, as it may be required to pay to the owners of such property, as may be evidenced by any receipt, judgment, or transcript thereof.

This amendment came under consideration in *Atlantic Coast Line* v. *Riverside Mills*, 219 U. S. 186, but the opinion and judgment was confined to that provision of the act which made the initial carrier liable for a loss upon the line of a connecting carrier, the property having been received under a bill of lading which confined the liability of the initial carrier to loss occurring upon its own line.

The significant and dominating features of that amendment are these:

First: It affirmatively requires the initial carrier to issue "a receipt or bill of lading therefor," when it receives "property for transportation from a point in one State to a point in another."

Second: Such initial carrier is made "liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it."

Third: It is also made liable for any loss, damage, or injury to such property caused by "any common carrier, railroad or transportation company to which such property may be delivered or over whose line or lines such property may pass."

Fourth: It affirmatively declares that "no contract, receipt, rule or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed."

Prior to that amendment the rule of carrier's liability, for an interstate shipment of property, as enforced in both Federal and state courts, was either that of the general common law as declared by this court and enforced in the Federal courts throughout the United States, *Hart* v. *Pennsylvania Railroad*, 112 U. S. 331; or that determined by the supposed public policy of a particular State, *Pennsylvania Railroad* v. *Hughes*, 191 U. S. 477; or that prescribed by statute law of a particular State, *Chicago &c. Railroad* v. *Solan*, 169 U. S. 133.

Neither uniformity of obligation nor of liability was

possible until Congress should deal with the subject. The situation was well depicted by the Supreme ·Court of Georgia in *Southern Pacific Co.* v. *Crenshaw,* 5 Ga. App. 675, 687, 63 S. E. Rep. 865, where that court said:

' "Some ·States allowed carriers to exempt themselves from all or a part of the common law liability, by rule, regulation, or contract; others did not; the Federal courts· sitting in the various States were following the local rule, a carrier being held liable in one court when under the same state of facts he would be exempt from liability in another; hence this branch of interstate commerce was being subjected to such a diversity of legislative and judicial holding that it was practically impossible for a shipper engaged in a business that extended beyond the confines of his own State, or for a carrier whose lines were extensive, to know without considerable investigation and trouble, and even then oftentimes with but little certainty, what would be the carrier's actual responsibility as to goods delivered to it for transportation from one State to another. The congressional action has made an end to this diversity; for the national law is paramount and supersedes all state laws as to the rights and liabilities and exemptions created by such transaction. This was doubtless the purpose of the law; and this purpose will be effectuated, and not impaired or destroyed by the state court's obeying and enforcing the provisions of the Federal statute where applicable to the fact in such cases as shall come before them."

That the legislation supersedes all the regulations and policies of a particular State upon the same subject results from its general character. It embraces the subject of the liability of the carrier under a bill of lading which he must issue and limits his power to exempt himself by rule, regulation or contract. Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of

the subject and supersede all state regulation with reference to it.   Only the silence of Congress authorized the exercise of the police power of the State upon the subject of such contracts.   But when Congress acted in such a way as to manifest a purpose to exercise its conceded authority, the regulating power of the State ceased to exist. *Northern Pacific Ry.* v. *State of Washington*, 222 U. S. 370; *Southern Railway* v. *Reid*, 222 U. S. 424; *Mondou* v. *Railroad*, 223 U. S. 1.

To hold that the liability therein declared may be increased or diminished by local regulation or local views of public policy will either make the provision less than supreme or indicate that Congress has not shown a purpose to take possession of the subject.   The first would be unthinkable and the latter would be to revert to the uncertainties and diversities of rulings which led to the amendment.   The duty to issue a bill of lading and the liability thereby assumed are covered in full, and though there is no reference to the effect upon state regulation, it is evident that Congress intended to adopt a uniform rule and relieve such contracts from the diverse regulation to which they had been theretofore subject.

What is the liability imposed upon the carrier?   It is a liability to any holder of the bill of lading which the primary carrier is required to issue "for any loss, damage or injury to such property caused by it," or by any connecting carrier to whom the goods are delivered.   The suggestion that an absolute liability exists for every loss, damage or injury, from any and every cause, would be to make such a carrier an absolute insurer and liable for unavoidable loss or damage though due to uncontrollable forces.   That this was the intent of Congress is not conceivable.   To give such emphasis to the words, "any loss or damage," would be to ignore the qualifying words, "caused by it."   The liability thus imposed is limited to "any loss, injury or damage caused by it or a succeeding

carrier to whom the property may be delivered," and plainly implies a liability for some default in its common law duty as a common carrier.

But it has been argued that the non-exclusive character of this regulation is manifested by the proviso of the section, and that state legislation upon the same subject is not superseded, and that the holder of any such bill of lading may resort to any right of action against such a carrier conferred by existing state law. This view is untenable. It would result in the nullification of the regulation of a national subject and operate to maintain the confusion of the diverse regulation which it was the purpose of Congress to put an end to.

What this court said of § 22 of this act of 1906 in the case of *Texas & Pac. Ry.* v. *Abilene Cotton Mills,* 204 U. S. 426, is applicable to this contention. It was claimed that that section continued in force all rights and remedies under the common law or other statutes. But this court said of that contention what must be said of the proviso in § 20, that it was "evidently only intended to continue in existence such other rights or remedies for the redress of some specific wrong or injury, whether given by the Interstate Commerce Act, or by state statute, or common law, not inconsistent with the rules and regulations prescribed by the provisions of this act." Again, it was said, of the same clause, in the same case, that it could "not in reason be construed as continuing in a shipper a common law right the existence of which would be inconsistent with the provisions of the act. In other words, the act cannot be said to destroy itself."

To construe this proviso as preserving to the holder of any such bill of lading any right or remedy which he may have had under existing Federal law at the time of his action, gives to it a more rational interpretation than one which would preserve rights and remedies under existing state laws, for the latter view would cause the proviso to

destroy the act itself. One illustration would be a right to a remedy against a succeeding carrier, in preference to proceeding against the primary carrier, for a loss or damage incurred upon the line of the former. The liability of such succeeding carrier in the route would be that imposed by this statute, and for which the first carrier might have been made liable.

We come now to the question of the validity of the provision in the receipt or bill of lading limiting liability to the agreed value of fifty dollars, as shown therein. This limiting clause is in these words:

"In consideration of the rate charged for carrying said property, which is regulated by the value thereof and is based upon a valuation of not exceeding fifty dollars unless a greater value is declared, the shipper agrees that the value of said property is not more than fifty dollars, unless a greater value is stated herein, and that the company shall not be liable in any event for more than the value so stated, nor for more than fifty dollars if no value is stated herein."

The answer states that the schedules which the express company had filed with the Interstate Commerce Commission showed rates based upon valuations; and that the lawful and established rate for such a shipment as that made by the plaintiff from Cincinnati to Augusta, having a value not in excess of fifty dollars, was twenty-five cents, while for the same package if its value had been declared to be one hundred and twenty-five dollars, the amount for which the plaintiff sues as the actual value, the lawful charge according to the rate filed and published would have been fifty-five cents. It is further averred that the package was sealed, and its contents and actual value unknown to the defendant's agent.

That no inquiry was made as to the actual value is not vital to the fairness of the agreement in this case. The receipt which was accepted showed that the charge made

was based upon a valuation of fifty dollars unless a greater value should be stated therein. The knowledge of the shipper that the rate was based upon the value is to be presumed from the terms of the bill of lading and of the published schedules filed with the Commission. That presumption is strengthened by the fact that across the top of this bill of lading there was this statement in bold type, "This Company's charge is based upon the value of the property, which must be declared by the shipper."

That a common carrier cannot exempt himself from liability for his own negligence or that of his servants is elementary. *York Mfg. Co.* v. *Illinois Central Railroad,* 3 Wall. 107; *Railroad Company* v. *Lockwood,* 17 Wall. 357; *Bank of Kentucky* v. *Adams Express Company,* 93 U. S. 174; *Hart* v. *Pennsylvania Railroad,* 112 U. S. 331, 338. The rule of the common law did not limit his liability to loss and damage due to his own negligence, or that of his servants. That rule went beyond this and he was liable for any loss or damage which resulted from human agency, or any cause not the act of God or the public enemy. But the rigor of this liability might be modified through any fair, reasonable and just agreement with the shipper which did not include exemption against the negligence of the carrier or his servants. The inherent right to receive a compensation commensurate with the risk involved the right to protect himself from fraud and imposition by reasonable rules and regulations, and the right to agree upon a rate proportionate to the value of the property transported.

It has therefore become an established rule of the common law as declared by this court in many cases that such a carrier may by a fair, open, just and reasonable agreement limit the amount recoverable by a shipper in case of loss or damage to an agreed value made for the purpose of obtaining the lower of two or more rates of

charges proportioned to the amount, of the risk. *York Mfg. Co.* v. *Railroad*, 3 Wall. 107; *Railroad* v. *Lockwood*, 17 Wall. 357; *Hart* v. *Pennsylvania Railroad*, cited above; *Phœnix Ins. Co.* v. *Erie & W. Trans. Co.*, 117 U. S. 312, 322; *Steam Co.* v. *Phenix Ins. Co.*, 129 U. S. 397, 442; *New York, L. E. & W. Ry.* v. *Estill*, 147 U. S. 591, 619; *Primrose* v. *W. U. Tel. Co.*, 154 U. S. 1, 15; *Chicago &c. Ry.* v. *Solan*, 169 U. S. 133, 135; *Calderon* v. *Atlas Steamship Company*, 170 U. S. 272, 278; *Pennsylvania Railroad* v. *Hughes*, 191 U. S. 477, 485.

That such a carrier might fix his charges somewhat in proportion to the value of the property is quite as reasonable and just as a rate measured by the character of the shipment. The principle is that the charge should bear some reasonable relation to the responsibility, and that the care to be exercised shall be in some degree measured by the bulk, weight, character and value of the property carried.

Neither is it conformable to plain principles of justice that a shipper may understate the value of his property for the purpose of reducing the rate, and then recover a larger value in case of loss. Nor does a limitation based upon an agreed value for the purpose of adjusting the rate conflict with any sound principle of public policy. The reason for the legality of such agreements is well stated in *Hart* v. *Pennsylvania Railroad*, cited above, where it is said (p. 340):

"The limitation as to value has no tendency to exempt from liability for negligence. It does not induce want of care. It exacts from the carrier the measure of care due to the value agreed on. The carrier is bound to respond in that value for negligence. The compensation for carriage is based on that value. The shipper is estopped from saying that the value is greater. The articles have no greater value, for the purposes of the contract of transportation, between the parties to that contract. The

carrier must respond for negligence up to that value. It is just and reasonable that such a contract, fairly entered into, and where there is no deceit practiced on the shipper, should be upheld. There is no violation of public policy. On the contrary, it would be unjust and unreasonable, and would be repugnant to the soundest principles of fair dealing and of the freedom of contracting, and thus in conflict with public policy, if a shipper should be allowed to reap the benefit of the contract if there is no loss, and to repudiate it in case of loss."

The statutory liability, aside from responsibility for the default of a connecting carrier in the route, is not beyond the liability imposed by the common law as that body of law applicable to carriers has been interpreted by this court as well as many courts of the States. *Greenwald* v. *Barrett*, 199 N. Y. 170, 175; *Bernard* v. *Adams Express Co.*, 205 Massachusetts, 254, 259. The exemption forbidden is, as stated in the case last cited, "a statutory declaration that a contract of exemption from liability for negligence is against public policy and void." This is no more than this court, as well as other courts administering the same general common law, have many times declared. In the same case, just such a stipulation as that here involved was upheld, the court saying (p. 259):

"But such a contract as we are considering in this case is not an exemption from liability for negligence in the management of property, within the meaning of the statute. It is a contract as to what the property is, in reference to its value. The purpose of it is not to change the nature of the undertaking of the common carrier, or limit his obligation in the care and management of that which is entrusted to him. It is to describe and define the subject matter of the contract, so far as the parties care to define it, for the purpose of showing of what value that is which comes into the carrier's possession, and for which he must account in the performance of his duty

as a carrier. It is not in any proper sense a contract exempting him from liability for the loss, damage or injury to the property, as the shipper describes it in stating its value for the purpose of determining for what the carrier shall be accountable upon his undertaking, and what price the shipper shall pay for the service and for the risk of loss which the carrier assumes."

In *Greenwald* v. *Barrett,* cited above, the same conclusion was reached as to the nature of the liability imposed and the purport of the exemption forbidden, the court, among other things, saying:

"The language of the enactment does not disclose any intent to abrogate the right of common carriers to regulate their charges for carriage by the value of the goods or to agree with the shipper upon a valuation of the property carried. It has been the uniform practice of transportation companies in this country to make their charges dependent upon the value of the property carried and the propriety of this practice and the legality of contracts signed by the shipper agreeing upon a valuation of the property were distinctly upheld by the Supreme Court of the United States in *Hart* v. *Penn. R. R. Co.,* 112 U. S. 331, 341."

To the same effect are the cases of *Travis* v. *Wells, Fargo Co.,* 79 N. J. L. 83; *Fielder* v. *Adams Express Co.,* 69 W. Va. 138; *S. C.,* 71 S. E. Rep. 99; *Larsen* v. *Oregon Short Line,* 38 Utah, 130; *S. C.,* 110 Pac. Rep. 983. See also, *Atkinson* v. *New York Transfer Co.,* 76 N. J. L. 608, as to the general rule.

That a carrier rate may be graduated by value and that a stipulation limiting recovery to an agreed value made to adjust the rate is recognized by the Interstate Commerce Commission, see 13 I. C. C. Rep. 550.

We therefore reach the conclusion that the provision of the act forbidding exemptions from liability imposed by the act is not violated by the contract here in question.

The demurrer to the answer of the defendant' below should have been overruled.

*For this reason the judgment is reversed, with direction to overrule the demurrer, and for such further proceedings as are not inconsistent with this opinion.*