[No. 7017.]

## J. S. APPEL SUIT & CLOAK CO. v. PLATT.

1. INTERSTATE COMMERCE—*Contracts Controlled by the Act of Congress.* The contract of an express company for carriage of goods from one state to another is controlled by the Interstate Commerce Act. *Adams Co. v. Croninger,* 226 U. S. 491 followed.

2. COMMON CARRIERS—*Contracts Limiting the Liability of the Carrier,* to a sum fixed by the value of the article as declared by the shipper, are, when fair, open, reasonable, and made for the purpose

of obtaining the lower of two or more rates, valid.  *Wells, Fargo & Co.
v. Neiman-Marcus Co.*, 33 S. C. Rep. 267, followed.

The express company had filed with the Interstate Commerce
Commission a table of its rates, graduated according to the value of
the shipment.  If the article was of a value exceeding fifty dollars
the rate was higher than if it was fifty dollars or less.  The shipping
clerk of the consignor was perfectly familiar with this rule of the
express company, and knew that if a value exceeding fifty dollars was
declared a higher rate would be charged than if the value was no more
than fifty dollars.  The agent of the express company who received
the package did not ask its value, or the contents, and the shipping
clerk made no statement in respect thereto, but accepted a receipt
stating that the shipment was valued at fifty dollars, that the liability
of the company "is limited to fifty dollars unless a greater value is
stated in this receipt", and that "the party accepting this receipt here-
by agrees" to its conditions.  *Held* that for the loss of the package
the consignee could recover no more than fifty dollars.

*Error to Denver District Court.*—Hon. Hubert L.
Shattuck, Judge.

Mr. Alfred Muller, Mr. H. H. Hindry and Mr. Guy
K. Brewster, for plaintiff in error.

Messrs. Dorsey & Hodges and Mr. E. I. Thayer, for
defendant in error.

Mr. Justice Hill delivered the opinion of the court:

In this action the plaintiff in error sought to recover
from the defendant in error the full market value of a
package of cloaks shipped from New York to Denver.
The package was never delivered.  The defendant in er-
ror, as agent of and for the express company, plead non-
liability in excess of $50 upon account of the provisions in
the receipt given the consignor when the shipment was
made.  This plea was sustained.

The receipt executed by the express company con-
tained a clause exempting it from loss or damage not due
to its fraud or gross negligence, and providing that it
should in no event be held liable or responsible "beyond
the sum of $50, at which sum said property is hereby
valued, unless the just and true value thereof is stated

herein.  *  *  *  The party accepting this receipt hereby agrees to the conditions herein contained. The liability of this company is limited to $50, unless a greater value is stated in this receipt." No greater or different value was declared. The evidence discloses, that, at the time the receipt was signed, the agent of the express company stamped thereon the words "value asked but not given;" that the value of the package was greatly in excess of $50; that the express company was engaged in interstate commerce; that in obedience to the act of congress of June 29th, 1906, c. 3591, 34 Stat. 584 (U. S. Comp. Stat. Supp. 1911, p. 1288) it had filed with The Interstate Commerce Commission its table of graduated rates, which included those from New York to Denver. These showed that the rates were graduated by weight and value, and that the lawful rate upon this package from New York to Denver was a certain amount if the value was $50 or less, but would be a different and higher rate if the value was fixed at a greater amount, depending entirely upon the value placed upon the property.

The consignor was a wholesale cloak house in New York. Mr. Hochner, its shipping clerk, testified, in substance, that the book of express receipts containing the receipt in question had been used for express shipments by, and was continuously in the possession of, the consignor from January 3rd, 1907 to March 16th, 1907 (the latter being the date of the delivery of this shipment); that prior to January, 1907, a similar book had been used; that after the shipment in question had been wrapped and marked, an employe of the shipper made out the receipt in question covering this and other packages consigned to other consignees; that all the writing on this receipt, including the name of the consignor, date of the receipt, number of articles, names of the consignees, and the destination of each shipment, except the name "Linder" (the express driver's signature) was inserted by an em-

ploye of the shipper; that for several years Linder, the express driver, had called and receipted for packages of different weights and different valuations; that he, Linder, well knew the business this firm was engaged in; that on occasion of the delivery of this shipment Linder did not ask for its value, and that he, Hochner (the shipping clerk) did not tell him the value; that Linder stamped the receipt in the value column "value asked but not given" as to each of the shipments appearing thereon, because such was the custom; that Linder did not ask the character of the contents of the package, and the shipping clerk did not tell him anything about it. Mr. Hochner further testified that he knew at that time if a value in excess of $50 was declared on a shipment, a higher rate would be charged, depending on the valuation; that $50 was the amount up to which a package could be valued without paying an excess rate; that the rate was fixed with reference to the fact that the value of the package did not exceed $50; that if the declared valuation exceeded $50 the rate was graduated and increased with such increased valuation; that prior to the date of this shipment he had read the printed part of the receipts in the book on various occasions and understood it and knew that the rates of transportation were based on the actual value of the shipment, which he learned from the rate book furnished by the express company.

The first question to determine is whether the operation and effect of the contract for this interstate shipment is governed by the local law of New York, or of Colorado, or by the act of congress regulating interstate commerce. This question has been settled by the supreme court of the United States in *Adams Express Co. v. Croninger*, 226 U. S., 491, 33 S. C. Rep. 148, 57 L. Ed. wherein it is held that such shipments are regulated by the 1906 act of congress amending the Interstate Commerce Act. This ruling, which must be followed by us,

makes unnecessary any determination of whether the laws of New York or of Colorado would control in case it was not covered by the act of congress regulating interstate commerce.

The second question pertains to the validity of that portion of the receipt which seeks to limit the liability of the carrier in case of loss, upon account of the alleged agreed value. Many reasons are urged why such contracts should not be enforced. The cases cited bearing upon such questions disclose that the language used in the different receipts is so different that each decision was usually based upon the wording of the instrument in the particular case. This has brought about an apparent additional conflict upon the question, and were it not for several recent decisions of the supreme court of the United States we would feel compelled to enter into a more thorough consideration of this question. In *Adams Express Co. v. Croninger, supra,* as above stated, it is held that such interstate shipments are regulated entirely by the act of congress. This case also holds that contracts limiting the liability of the carrier in case of loss upon account of the declared value of the article fixed by the shipper when they are fair, open and reasonable, and made for the purpose of obtaining the lower of two or more rates, are valid. Other late cases where agreed value clauses (in case of loss) have been sustained are, *Chicago, Burlington & Quincy Railway Co. v. Miller,* 226 U. S., 513, 33 S. C. Rep. 155, 57 L. Ed: *Chicago, St. Paul, etc. Ry. Co. v. Latta,* 226 U. S., 519, 33 S. C. Rep. 155, 57 L. Ed—: *Wells, Fargo & Co., et al. v. Neiman-Marcus Co.,* 227 U. S. 469, 33 Sup. Ct. Rep. 267, 57 L. Ed: *Kansas City S. R. Co. v. Carl,* 227 U. S. 639, 33 Sup. Ct. Rep. 391, 57 L. Ed.—: *Missouri, K. & T. R. Co. v. Harriman Brothers,* 227 U. S. 657, 33 Sup. Ct. Rep. 397, 57 L. Ed.— These cases overrule decisions by the courts of Kentucky, Nebraska, Arkansas, Texas and the United States Circuit

Court of Appeals for the eighth circuit. The identical question now under consideration was decided adversely to the contention of the plaintiff in error in *Wells, Fargo & Co. et al. v. Neiman-Marcus Co., supra,* where practically the same language was used in the receipt, and where the shipper's lack of knowledge and his actions were more favorable to the claimant than they are to the plaintiff in error here, and wherein it was held that where different rates similar to those here, depending upon valuation, had been fixed and filed with the Interstate Commerce Commission, etc., that such contracts as this limiting the liability of the transportation company accordingly were fairly made and should be upheld. In this latter case the words "value asked but not given" were not endorsed upon the receipt as they were upon the one under consideration; regardless of this, the court held that the portion of the receipt stating "the liability should not exceed $50, at which sum said property is hereby valued unless a different value is hereinbefore stated" did declare and represent a value and was a valid agreement. It is our duty to follow this ruling pertaining to such interstate shipments where the facts are similar, as they are in this case.

Counsel for plaintiff in error call attention to our 1907 act in relation to intrastate shipments and say it is almost identical in language with the 1906 act of congress amending the interstate commerce act, for which reason they claim that the ruling here will, in effect, be a construction of the Colorado statutes. In considering this matter we have not had occasion to study the provisions of our act pertaining to intrastate shipments, but upon account of this suggestion we think it proper to state that this ruling is based entirely upon the act of congress pertaining to an interstate shipment, the interpretation given to it by the supreme

court of the United States and its ruling in sustaining the validity of similar contracts covering such shipments.

The judgment is affirmed.

*Affirmed.*

CHIEF JUSTICE MUSSER and Mr. JUSTICE GABBERT concur.