### MITCHELL ET AL. v. GREENVILLE S. & A. RY. CO.

### (83 S. E. 261.)

CARRIERS OF GOODS.   ROUTING INTERSTATE SHIPMENTS.   DELAYS.

1. The Interstate Commerce Commission, under authority of Interstate Commerce Act, sec. 15, subd. 5 (U. S. Comp. St. 1913, sec. 8583), having ruled that a shipper may direct as to terminal routing or delivery of shipments which are to go beyond the lines of the initial carrier, but having fixed no penalty for a carrier's violation of a shipper's routing, the State law on that subject (Civ. Code 1912, sec. 3194), providing a penalty for a carrier's violation of the preceding section conferring the same right, was superseded, so that a shipper could not recover a penalty for a terminal carrier's violation of the routing of an interstate shipment, under the rule that the State legislature may not add to or take from the Federal statute governing interstate commerce.

2. The penalty for misrouting a shipment of goods provided by Civil Code 1912, secs. 3194 and 3195, does not supplement the Federal Interstate Commerce Act, so as to apply to an interstate shipment.

3. Where a bill of lading on an interstate shipment routed a car over the line of a particular terminal carrier and the shipment was not delivered to that carrier, but to defendant, which had no facilities for delivering it into plaintiff's yard, and defendant, after being notified of the error, was informed of plaintiff's urgent need of the shipment, but nevertheless kept the car an unreasonable length of time before it was returned to the place where defendant received it, to be transhipped over the designated terminal carrier into plaintiff's yard, plaintiff was entitled to recover the damages sustained independent of the Interstate Commerce Act, and regardless of whether defendant knew, in the first instance, that the car had been misrouted.

Before WILSON, J., Anderson, March, 1914.   Modified.

Action by Ross Mitchell and J. R. Cox, partners in trade, as Mitchell-Cox Lumber Co., plaintiffs-appellants, against

FOOTNOTE.—As to liability of carrier of goods by land for deviation from route, see note in 15 A. & E. Cas. 76, and 2 British Ruling Cases 587 to 620.   Also note in 23 A. & E. Ann. Cas. 1912b, p. 615.   As to duty of connecting carrier to know contract made by initial carrier, and affecting of change in route, see note in 52 L. R. A. (N. S.) 458 to 470. Effect of deviation on rights of liabilities of carrier, see note in 3 B. R. C. 285.

Greenville, Spartanburg and Anderson Railway Company, defendant-respondent.

From an order sustaining a demurrer, and dismissing the complaint, the plaintiffs appeal. The facts are stated in the opinion.

*Mr. Leon L. Rice,* for appellants, cites: *As to common law action for detention of car:* 78 S. C. 8; 95 S. C. 485; 6 Cyc. 442-448; 7 Rich. 190; 75 S. C. 321; 76 S. C. 342. *As to action for penalty, reviews:* 63 S. C. 248; Interstate Commerce Act, ed. September 1912, p. 29; Conference Rulings, April 13, 1913, p. 64, sec. 214b; Civil Code 1912, secs. 3277, 3194 and 3195; 54 Am. St. Rep. 822; 50 L. Ed. U. S. 592; 41 *Ib.* 853; 226 U. S. 505, 506.

*Messrs. Bonham, Watkins & Allen,* for respondent, cite:

226 U. S. 491; 94 S. C. 129; 63 S. C. 248; 98 S. C. 63; 226 U. S. 426; 227 U. S. 639.

October 24, 1914.

The opinion of the Court was delivered by MR. JUSTICE GAGE.

The plaintiffs live in the State of Tennessee; they sent hither a carload lot of cement, to be delivered to them at Belton, in this State.

The bill of lading therefor routed the car over the Nashville, Chattanooga and St. Louis Railroad, the Georgia Central, the Charleston and Western Carolina and the Blue Ridge,—four lines all told. The Blue Ridge terminates at Belton.

But at Greenwood (on line of the C. & W. C. Railway, the third carrier) the defendant, which is an electric line, received the car and carried it to Belton, but not into plaintiff's yard.

The plaintiffs sued defendant and alleged two delicts: (1) That the car left Tennessee 4th September, 1913; that after it had reached Belton, and on plaintiffs' demand, it was reshipped back to Greenwood, and reached the plaintiff over the schedule route only on 24th September; that plaintiffs needed the cement in the meantime, had to buy it at retail, and was thereby damaged $60; and (2) that defendant violated sections 3194 and 3195 of the Code of Laws, and is liable to plaintiff for a penalty of $500 there prescribed.

The defendant demurred to the first cause of action (a) because the defendant received and carried the car in the way prescribed by the Federal statutes; (b) because the State statute is contrary to the Federal statute; and (c) because it was not alleged that defendant knew it was diverting the car.

The defendant demurred to the second cause of action because the penalty prescribed by the State statute is inconsistent with the Federal law.

The Circuit Court sustained the demurrer and dismissed the complaint.

The plaintiff appeals from the order, on five grounds. They will not be considered *seriatim*, but their subject matter will be embraced in this judgment. And the second cause of action and demurrer thereto will be considered first.

The shipment is concededly interstate; and it is also conceded that the Federal law, at every point of application, is supreme; and to it the State statute must yield.

The appellant makes this statement of the Federal law: "At page 29 of the Interstate Commerce Act, revised September 1, 1912, under the heading "Shippers may designate route," we find the following language:

"In all cases where at the time of delivery of property to any railroad corporation being a common carrier, for transportation subject to the provisions of this act to any point

of destination——the person, firm or corporation making such shipment, subject to such reasonable exceptions and regulations as the Interstate Commerce Commission shall from time to time prescribe, shall have the right to designate, in writing, by which of such through routes such property shall be transported to destination, and it shall thereupon be the duty of the initial carrier to route said property and issue a through bill of lading therefor as so directed, and to transport said property over its own line or lines and deliver the same to a connecting line or lines according to such through route, and it shall be the duty of each of said connecting carriers to receive said property and transport it over the said line or lines and deliver the same to the next succeeding carrier or consignee according to the routing instructions, in said bill of lading."

"The Interstate Commerce Commission acting under the authority given it under the above act, on March 18, 1907, ruled that the shipper may direct as to terminal routing or delivery of shipments which are to go beyond the lines of the initial carrier. See Conference Rulings, issued April 13, 1913, page 64, sec. 214b."

The State statute is embraced in section 3194 of the Code of Laws 1912, vol. I.

Both enactments cover the same subject; if they are identical, that by the State needs not to be enforced; if they are not identical, that by the Federal goverment must govern in exclusion of that by the State.

But the State statute goes one step further than the Federal statute; secion 3195 penalizes the carrier, for violation of the preceding section, by a fine of $500.

The Federal statute does not do that.

Had the Federal statute done the same thing, but fixed the penalty at $100 or $1,000, then that penalty would have to be enforced in preference to the penalty fixed by the State statute.

The same thing follows where the Federal statute fixes no penalty; in that case, no penalty may be assessed.

Where Congress has spoken upon a subject within its jurisdiction, it is plain that a legislature may not *take from* that statute; it ought to be equally plain that a legislature may not *add to* the Federal statute. *Adams Express Co.* v. *Croninger,* 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, 44 L. R. A. (N. S.) 257.

The issue now made was practically decided against the appellant in *Lowe* v. *S. A. L. Railway,* 63 S. C. 248, 41 S. E. 397, 90 Am. St. Rep. 678.

The diversion there was by the initial carrier, and it was the defendant; and the diversion was in North Carolina.

Here the diversion was by an intermediate carrier, and one not named in the bill of lading; the diversion did occur in South Carolina.

But both cases fall under the exclusive terms of the Federal statutes; for it does not exact a penalty for diversion.

Our conclusion is, that the demurrer to the second cause of action is sound, and the order sustaining it is right.

It is equally plain that the demurrer to the first cause of action is unsound, and it ought not to have been sustained.

The complaint therein alleges enough, independent of the Interstate Commerce Act, to make the defendant a wrongdoer. The Federal law has no application to the cases alleged in the 4th and 5th paragraphs of the first cause of action stated in the complaint. After the defendant had delivered the car at Belton, it was informed of the urgent need of the cement in the plaintiff's yard at the same place; it kept the car an "unreasonable length of time" before it was returned to Greenwood to be delivered by the Blue Ridge Railroad in plaintiff's yard.

It matters not that the plaintiff did not allege that the defendant *knew* in the first instance the car had been misrouted; it was notified of the fact after the car reached

Belton on its line; that was enough; and after such notice the defendant had no right to unreasonably detain the car.

Our judgment is, that the order sustaining the demurrer to the first cause of action be set aside, and that the order sustaining the demurrer to the second cause of action be affirmed.