21462. SOUTHERN RAILWAY COMPANY *v.* INTERNATIONAL VEGETABLE OIL COMPANY.

DECIDED JUNE 10, 1931. REHEARING DENIED JULY 14, 1931.

*Cumming & Harper, J. E. Hall,* for plaintiff in error.
*Cohen & Gray,* contra.

LUKE, J. International Vegetable Oil Company brought suit in the superior court of Richmond county against Southern Railway Company for damages on account of alleged negligence of the railway company in failing to keep a car of cottonseed, while in its custody and control and in the course of shipment from Blackville, S. C., to Augusta, Ga., in such place or places as would have prevented the same from becoming wet and damaged. The railway company in its answer denied the allegations of negligence, but admitted that the car of cottonseed had been damaged (if at all, while in its custody as a common carrier or otherwise) "by being more or less submerged while in the Hamburg yards of the company, located in the State of South Carolina, in and by an unusual and unprecedented flood of the Savannah river, of such height and suddenness of rise of waters as to make and constitute an act of God," and while moving in interstate commerce.

A jury trial resulted in a verdict in favor of the plaintiff for $948.95, the proved value of the shipment. Defendant's motion for a new trial, upon the general grounds, having been overruled, exception was taken, and the case brought here for review. The only question to be determined in the circumstances is whether or not, under the established rules and principles of law, the evidence

adduced upon the trial is sufficient to support the verdict.

An agreed statement of facts shows: "The carload of cotton-seed involved in this suit reached Hamburg, South Carolina, yards of the defendant at 1:45 p. m., September 30, 1929, in Southern car No. 254549. It was not in the Hamburg yards, nor was it submerged in the flood which took place September 26 and 27, and referred to as the first flood. It got into Hamburg yards for the first time at 1:45 p. m. The car in question was shipped originally from Blackville, S. C., under a bill of lading dated September 27, 1929, and moved from Blackville in the morning of September 28, 1929, and was held at Montmorenci, S. C., until subsequently moved into Hamburg. This car was delivered by the Southern Railway to the Georgia Railroad in the Georgia Railroad yards in Augusta, Ga., to be then switched by the Georgia Railroad switch-engines to the industrial track of the plaintiff, where it was so switched on October 8. The damage complained of was caused by being in the flood of October 1 and 2, while in the Hamburg yards of the defendant."

The plaintiff, to maintain the issue on its part, introduced testimony showing the geographical and topographical situation of the Hamburg yards and adjacent territory, especially with reference to its proximity to the Savannah river, and, in considerable detail, showing the occurrence of previous floods over a long period of time, with the dates, the heights, and the hourly rise, from records kept by the weather-bureau official at the City of Augusta. In minute detail are shown the conditions incident to the floods of September 26th and 27th, called the first flood, and that of October 1st and 2d, 1929, referred to in the agreed statement of facts. It appeared from this evidence that on September 26 and 27 the Savannah river rose very much above flood stage, the highest on record, reaching 46.3 feet; that it then commenced to recede, and subsided to the low point of 21 feet on September 30th at 8 o'clock p. m., and then started during that night to rise again, and "during October 1 and 2 reached a stage of 45.1 at midnight of the 2d;" and that that was the highest the river had ever risen before, with the exception of the flood of two or three days before. "The first rainstorm passed and the weather cleared up entirely, and there was no rainfall in the interim, and the river fell and there was nothing to indicate on September 30th to any one that there was

going to be a repetition of what had taken place on September 26th and 27th:" so says the plaintiff's witness.

Upon this showing this court has experienced no difficulty in arriving at the conclusion that the damage complained of was in fact an act of God, as defined by the law; thus leaving it to be further determined whether or not it is shown by the evidence that some negligence of the defendant railway company proximately caused or contributed to the injury complained of. But before proceeding with the examination of the evidence with a view to a determination of the question of negligence, it becomes the duty of this court to decide upon which of the parties to this case the law imposes the burden of proof. It is evident, from the allegations of the petition and from the agreed statement of facts, that the shipment involved in this case, at the time of the damage complained of, was moving in interstate commerce. The Federal statute which governs the liability of carriers in such cases, known as the Carmack amendment, provides as follows: "That any common carrier, railroad or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage or injury to such property caused by it or by any common carrier, railroad or transportation company to which such property may be delivered, or over whose line or lines such property may pass, and no contract, receipt, rule or regulation shall exempt such common carrier, railroad or transportation company from the liability herein imposed: provided that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law." Act of June 29, 1906, 34 Stat. 595, c. 3591, par. 7.

Referring to the foregoing statute, the Supreme Court of the United States, in the case of Adams Express Co. v. Croninger, 226 U. S. 491 (33 Sup. Ct. 148, 57 L. ed. 314, 44 L. R. A. (N. S.) 257), held: "that the legislation supersedes all the regulations and policies of a particular state upon the same subject results from its general character." And other decisions of the same court are to the same effect. It follows, of course, that the rule as to the burden of proof as laid down by the Federal courts, and not by the State courts, must be applied. In the case of Memphis & Charleston Ry.

Co. *v.* Reeves, 10 Wall. 176 (19 L. ed. 909), which seems to be frequently cited as a precedent, the court says: "When the damage is shown to have resulted from the immediate act of God, such as a sudden and extraordinary flood, the carrier would be exempt from liability unless the plaintiff shall prove that the defendant was guilty of some negligence in not providing for the safety of the goods. That he could do so must be proven by the plaintiff or must appear in the facts of the case."

Under the foregoing rule, that some negligence upon the part of the defendant must be shown by the plaintiff or must appear from the facts of the case, what are the facts and circumstances shown by the evidence to establish such negligence, or from which the jury in this case might have reasonably concluded that such negligence proximately caused or contributed to the damage for which recovery is sought? Or, to paraphrase the statement of responsibility of the common carrier, as adopted by the counsel for defendant in error (plaintiff below) in their brief: Did the railway company, after discovery that the car of cottonseed entrusted to its care was in peril of injury or of destruction by flood, actively and energetically use all means at its command, or which it might be expected that one engaged in such business would possess, to meet the emergency and save the property from injury? Failure in this respect will subject the carrier to liability.

Turning again to the brief of evidence, we find that the Hamburg yard of the railway company is located on the South Carolina side of the Savannah river, and on the opposite side of the river is located what is known as its Augusta yard; that these two yards are connected by a railway bridge of the Southern Railway Company; and that the flood stage of the river is 32 feet, "that is when it begins to get over its banks on the South Carolina side." It appears that on September 26 and 27 the river reached a stage of 46.3 feet, and that during this flood, there were present in Augusta and Hamburg, in addition to other employees of the railway company, the Division Superintendent, Columbia Division, who came to protect the freight from damage; General Superintendent for Southern Railway of the transportation of lines east, who came to restore transportation of freight and passengers; Track Supervisor of the Columbia Division, who was there for the purpose of repairing tracks, and who had with him 75 employees; Engineer

of Bridges, who came to look after the Savannah river bridge; Engineer in the Maintenance of Ways Department, who came from Columbia to the Hamburg yard on October 1st. It further appears that the car of cottonseed arrived in the Hamburg yard on Monday, September 30 at 1:45 p. m., after being delayed in transit at Montmorenci by reason of flood waters, and that there was a considerable number of other freight-cars in the Hamburg yards for classification and further transportation at the same time. It appears that the flood of September 26-27 had damaged one of the piers of the railway bridge spanning the Savannah river; but on the 30th cars were being moved, with difficulty, across this bridge, by employing an engine to push the cars onto the bridge from one side, and another to remove them from the opposite side.

Counsel for plaintiff below point out in their brief that "among the tracks running out of the yard, where this car might have been placed with safety to its contents, was one west of the Southern tracks called the Georgia & Florida track, which on September 30 was out of commission; the North Augusta track of the Southern Hamburg yard was also out of commission, and on September 30 no cars could be moved over the Southern Railway bridge," except in the manner referred to. And it appears that there was no other outlet available for the purpose. Substantially, if not exactly, this was the situation with reference to the shipment here involved on October 1, when, as hereinbefore appears, the Savannah river, after having reached the highest stage on record, 46.3 feet, on September 26-27, and then subsiding to the low stage of 21 feet on September 30 at 8 o'clock p. m., with nothing to indicate to any one that on September 30 there was going to be a repetition of what had taken place on the 26th and 27th, started that night to rise again, and at midnight on the 2nd again reached the stage of 45.1 feet.

We have exhausted the brief of evidence in a vain effort to find any proven fact indicating any act of negligence, either of commission or omission, on the part of the railway company, to which the damage to the car of cottonseed might be attributed, in the unusual, unexpected, and extraordinary circumstances of the case. Counsel for defendant in error ask in their brief if it was not negligence, under the circumstances, for Mr. F. M. Hair, Division Superintendent, Columbia Division, on September 30, to have issued a bulletin: "Effective today regular service into Augusta, freight and pas-

senger, will be resumed. All restrictions placed in my bulletin September 27 are hereby withdrawn." Remembering the conditions that existed on that day, we think that the bulletin was one that an ordinarily prudent and careful officer or employee would be expected to issue. Subsequently, it so happened, another unexpected event intervened which rendered the order contained in the bulletin impossible of performance. But that event could not operate ex post facto upon any act which, at the time of its performance, was, so far as the power of human intelligence is concerned, entirely reasonable and proper. It is urged by counsel for defendant in error that the railway company neither availed itself of information obtainable nor acted upon such information as it had, to the end that the car of cottonseed would be safely placed in anticipation of the sudden second flood. But we can not see that the evidence anywhere warrants such an inference.

Being of the opinion that, with reference to the question of negligence, the plaintiff below completely failed to sustain the burden of proof imposed upon it by law, we hold that the verdict of the jury is in no wise supported by the evidence, and that the trial court erred in overruling the defendant's motion for a new trial.

*Judgment reversed. Broyles, C. J., concurs. Bloodworth, J., absent on account of illness.*