---

(158 App. Div. 665.)

BARSTOW v. NEW YORK, N. H. & H. R. CO.

(Supreme Court, Appellate Division, First Department.   November 7, 1913.)

1. COMMERCE (§ 8*)—POWER TO REGULATE—EXERCISE BY CONGRESS OF POWER TO REGULATE INTERSTATE COMMERCE.

　　All state laws affecting the right of carriers to restrict their liability to an agreed or declared valuation on interstate shipments are superseded by Act June 29, 1906, c. 3591, 34 Stat. 584 (U. S. Comp. St. Supp. 1911, p. 1288) § 7, known as the Carmack Amendment to the Interstate Commerce Act, limiting the right of contracting against liability, and Act June 18, 1910, c. 309, 36 Stat. 546 (U. S. Comp. St. Supp. 1911, p. 1286), § 7, requiring interstate carriers to prescribe regulations respecting the carrying of baggage, by which acts Congress took possession of the subject, and all questions arising thereunder are controlled by the decisions of the United States Supreme Court.

　　[Ed. Note.—For other cases, see Commerce, Cent. Dig. § 5; Dec. Dig. § 8.*]

2. CARRIERS (§ 405*) — CARRIAGE OF PASSENGERS — BAGGAGE — LIMITATION OF LIABILITY.

　　Under the decisions of the United States Supreme Court, where the fare from G., Mass., to New York City was based on the cost of transporting the passenger and not exceeding $100 worth of baggage, and plaintiff's ticket and baggage check stipulated that liability for baggage was limited to $100, unless a greater value was declared and excess charges paid, and proper schedules of such excess charges had been filed and the required notices given in compliance with the Interstate Commerce Act (Act February 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]), as amended, and the regulations of the Interstate Commerce Commission, plaintiff, who had declared no excess value, could not recover more than $100 for the loss of her baggage, though she had no actual knowledge of the limitation.

　　[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1544–1549; Dec. Dig. § 405.*]

　　Scott, J., dissenting.

Controversy, submitted upon an agreed statement of facts, by Katherine Barstow against the New York, New Haven & Hartford Railroad Company to recover the value of plaintiff's baggage which de-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

fendant failed to deliver.   Judgment in accordance with the defendant's prayer.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, CLARKE, and SCOTT, JJ.

Hyman & Campbell, of New York City (Charles E. Scribner, of New York City, of counsel), for plaintiff.

Charles M. Sheafe, Jr., of New York City (William L. Barnett, of New York City, of counsel), for defendant.

CLARKE, J.   The plaintiff on September 15, 1911, purchased at Gardner, Mass., a first-class passenger ticket to New York City via the Boston & Maine Railroad Company and the defendant, for which she paid $4.78.   In determining the rate, the railroad companies, among other things, based the same upon the cost of transporting the passenger, together with the cost of transporting 150 pounds of personal effects of a value not exceeding $100.   This ticket contains the following:

"Issued by Boston & Maine R. R. * * * Good subject to the following contract between purchaser and all lines over which this ticket reads for one passage to New York, N. Y."

It sets forth provisions as to limit of time, class, and stopovers, and contains the following:

"Baggage liability is limited to personal baggage not to exceed one hundred (100) dollars in value for a passenger presenting a full ticket and fifty (50) dollars in value for a half ticket, unless a greater value is declared and stipulated by the owner and excess charges thereon paid at time of checking the baggage."

The first word "baggage" of that clause is printed in large, blackfaced type.   After purchasing her ticket she checked a trunk not exceeding 150 pounds in weight and received a baggage check which, upon the face thereof, contained the following:

"A passenger is entitled to the free carriage of baggage not exceeding 150 lbs. in weight or $100 in value, except that in the state of New York the value is limited to $150.   Excess in weight or declared value will be charged for at published tariff rates."

Plaintiff's attention was not called to said provisions on the ticket or the check.   She did not read them and was not aware of them. The trunk and its contents, consisting of personal baggage, were of the value of $1,300, and their nature and amount were proper and reasonable with reference to plaintiff's station in life and the purpose of her journey.   She did not declare and stipulate at the time her baggage was checked that it exceeded $100 in value; nor did she pay any charges for valuation in excess of $100; nor did the Boston & Maine Railroad Company, or any one in its behalf, make any inquiry as to the value of plaintiff's baggage nor inform her that it was material or necessary to state such value.

The defendant received the plaintiff and her baggage at Springfield, Mass., as a connecting carrier in interstate commerce and on the ticket aforesaid transported her and her baggage to the Grand Central Terminal in New York City.   Upon the day after her arrival

she presented said check to the defendant and demanded her trunk,. "but the defendant failed to deliver said baggage to her and has never delivered it to her nor accounted to her for such failure to deliver it nor given any excuse for such failure to deliver it. From these facts it is inferable that the failure to deliver the trunk was due to defendant's negligence."

At the time plaintiff purchased her ticket, there existed an order of the Interstate Commerce Commission dated the 2d day of June, 1908, requiring carriers to keep on file in their stations rates and schedules of fares. The Boston & Maine Railroad Company had fully complied with the requirements of said order and had printed, published, posted, kept open for public inspection, and had filed with the Interstate Commerce Commission, in compliance with the provisions of the act of Congress relating to interstate commerce, and the amendments thereof, and the orders and regulations of the Interstate Commerce Commission, all the rates, fares, and charges for transportation between different points, and also all the rules and regulations which in any wise change, affect, or determine any part of the aggregate of such rates, fares, and charges or the value of the services rendered to the passenger, including the rates, fares, and charges and the aforesaid rules and regulations between Gardner, Mass., and New York City, N. Y., via the defendant company, which rates were operative and in full force during September, 1911; and it had placed in the custody of its agent at Gardner, Mass., all the rate and fare schedules applying from said station, and said agent was instructed and required to give, and whenever inquired of gave, information contained in said schedules and lent assistance to seekers for information therefrom and gave and accorded any and all inquirers opportunity to examine any of said schedules. There was posted in two conspicuous places in the station near the ticket office a printed placard in large, black-faced type:

"Boston & Maine R. R. Complete public files of this company's freight and passenger tariffs are located at the offices of the general freight agent and general passenger agent, north station, in the city of Boston, Mass., and at the station freight and Union Station ticket offices respectively, in the cities of Worcester, Mass., and Portland, Me. The rate and fare schedules applying from or at this station and indices of this company's tariffs are on file in this office and may be inspected by any person upon application, and without the assignment of any reason for such desire. The agent or other employé on duty in the office will lend any assistance ·desired in securing information from or in interpreting such schedules."

In the said tariff schedules so filed with the Interstate Commerce Commission, and on file in the station, is the following:

"Baggage Rules. One hundred and fifty pounds of personal baggage, not exceeding $100 in value, will be checked free for each passenger on presentation of a full ticket, and seventy-five pounds for a half ticket. Baggage Liability is limited to personal baggage not to exceed one hundred (100) dollars in value for a passenger presenting a full ticket, and fifty (50) dollars in value for a half ticket, unless a greater value is declared and sitpulated by the owner and excess charges thereon paid at time of checking the baggage. Excess Valuation.—For excess value the rate will be one-half of the current excess baggage rate per 100 lbs. for each one hundred (100) dollars or fraction

thereof increased value declared. The minimum charge for excess value will be 25 cents."

And there was posted in a conspicuous place in the baggage room of the station where the baggage was checked a notice "Boston & Maine R. R.," in large, black-faced type, "Excess Baggage Rates in Effect July 1, 1908," containing the provisions just quoted from the tariff as to excess weight and excess valuation, and also the rate upon excess baggage per 100 pounds to be calculated upon the various rates of ticket fare. The excess rate for the valuation of $1,300 was $4.80. The plaintiff's attention was not called to the schedules or notices and she did not know that the defendant's charges were based on the value of the baggage or in any way affected by the value of the baggage.

Upon the foregoing facts the plaintiff demands judgment for $1,-300, with interest from September 16, 1911, with costs, and the defendant demands judgment dismissing the plaintiff's action with costs, except as to $100, with interest from the same date.

[1] The original Interstate Commerce Act of February 4, 1887, c. 104, 24 Stat. 379 (U. S. Comp. St. 1901, p. 3154), was amended by the act of June 29, 1906, 34 Stat. 584, c. 3591 (U. S. Comp. St. Supp. 1911, p. 1288). The twentieth section as amended, generally referred to as the Carmack Amendment, is as follows:

"That any common carrier, railroad, or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered or over whose line or lines such property may pass, and no contract, receipt, rule, or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed: Provided, that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law. That the common carrier, railroad, or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad, or transportation company on whose line the loss, damage, or injury shall have been sustained the amount of such loss, damage, or injury as it may be required to pay to the owners of such property, as may be evidenced by any receipt, judgment, or transcript thereof."

Adams Express Co. v. Croninger, 226 U. S. 491, 33 Sup. Ct. 148, 57 L. Ed. 314, reviewed a judgment of the circuit court, Kenton county, Ky., against a carrier for the full value of an undelivered interstate shipment, notwithstanding a stipulation limiting the carrier's liability to the agreed value. The receipt or bill of lading issued showed no value, but contained a stipulation limiting the liability to $50 if no value was stated therein. Lurton, J.:

"The answer relies upon the act of Congress of June 29, 1906, * * * as the only regulation applicable to an interstate shipment and avers that the limitation of value, declared in its bill of lading, was valid and obligatory under that act. * * * Under the law of Kentucky this contract, limiting the plaintiff's recovery to the agreed or declared value, was invalid, and the shipper was entitled to recover the actual value, 'unless' as said in Adams Express Co. v. Walker, 119 Ky. 121 [83 S. W. 106, 67 L. R. A. 412], * * * 'sufficient facts are shown, independently of the special contract, to avoid the contract for fraud or to create an estoppel at common law.' The question

upon which the case must turn is whether the operation and effect of the contract for an interstate shipment, as shown by the receipt or bill of lading, is governed by the local law of the state or by the acts of Congress regulating interstate commerce. That the constitutional power of Congress to regulate commerce among the states and with foreign nations comprehends power to regulate contracts between the shipper and the carrier of an interstate shipment by defining the liability of the carrier for loss, delay, injury, or damage to such property needs neither argument nor citation of authority. But it is equally well settled that, until Congress has legislated upon the subject, the liability of such a carrier, exercising its calling within a particular state, although engaged in the business of interstate commerce, for loss or damage to such property, may be regulated by the law of the state."

After alluding to the Carmack Amendment and the diverse holdings of the different state and United States courts prior thereto, the court proceeded:

"That the legislation supersedes all the regulations and policies of a particular state upon the same subject results from its general character. It embraces the subject of the liability of the carrier under a bill of lading which he must issue and limits his power to exempt himself by rule, regulation, or contract. Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject and supersede all state regulation with reference to it. Only the silence of Congress authorized the exercise of the police power of the state upon the subject of such contracts. But, when Congress acted in such a way as to manifest a purpose to exercise its conceded authority, the regulating power of the state ceased to exist. * * * To hold that the liability therein declared may be increased or diminished by local regulation or local views of public policy will either make the provision less than supreme or indicate that Congress has not shown a purpose to take possession of the subject. The first would be unthinkable and the latter would be to revert to the uncertainties and diversities of rulings which led to the amendment. The duty to issue a bill of lading and the liability thereby assumed are covered in full; and, though there is no reference to the effect upon state regulation, it is evident that Congress intended to adopt a uniform rule and relieve such contracts from the diverse regulation to which they had been theretofore subject."

After quoting the language of the bill of lading limiting the liability, the court proceeded:

"The answer states that the schedules which the express company had filed with the Interstate Commerce Commission showed rates based upon valuations; and that the lawful and established rate for such a shipment as that made by the plaintiff from Cincinnati to Augusta, having a value not in excess of $50, was 25 cents, while for the same package if its value had been declared to be $125, the amount for which the plaintiff sues as the actual value, the lawful charge according to the rate filed and published would have been 55 cents. It is further averred that the package was sealed and its contents and actual value unknown to the defendant's agent.

"That no inquiry was made as to the actual value is not vital to the fairness of the agreement in this case. The receipt which was accepted showed that the charge made was based upon a valuation of $50 unless a greater value should be stated therein. The knowledge of the shipper that the rate was based upon the value is to be presumed from the terms of the bill of lading and of the published schedules filed with the Commission. * * * That a common carrier cannot exempt himself from liability for his own negligence or that of his servants is elementary. * * * But the rigor of this liability might be modified through any fair, reasonable, and just agreement with the shipper which did not include exemption against the negligence of the carrier or his servants. The inherent right to receive a compensation commensurate with the risk involved the right to protect himself from fraud and imposition by reasonable rules and regulations and the right to agree upon a rate propor-

tionate to the value of the property transported. It has therefore become an established rule of the common law, as declared by this court in many cases, that such a carrier may by a fair, open, just. and reasonable agreement limit the amount recoverable by a shipper in case of loss or damage to an agreed value made for the purpose of obtaining the lower of two or more rates of charges proportioned to the amount of the risk.   *   *   *   Neither is it conformable to plain principles of justice that a shipper may understate the value of his property for the purpose of reducing the rate and then recover a larger value in case of loss. Nor does a limitation based upon an agreed value for the purpose of adjusting the rate conflict with any sound principle of public policy.   *   *   *   The demurrer to the answer of the defendant below should have been overruled. For this reason the judgment is reversed."

Kansas City Southern Ry. Co. v. Carl. 227 U. S. 639, 33 Sup. Ct. 391, 57 L. Ed. 683, was error to the Supreme Court of Arkansas to review a judgment affirming a judgment from the Circuit Court affirming a justice's judgment for the value of an undelivered interstate shipment, notwithstanding a stipulation limiting the carrier's liability. The defendant in error testified, over objection, that, though he could read and write and had signed the release set out and had received the bill of lading, he had neither read them nor asked any questions about them and had not been given any information as to the contents of either document and had no knowledge of the existence of the two rates. He was also allowed to testify that, if he had known of the existence of the two rates and the effect of accepting the lower, he would have paid the higher rate. There was no evidence tending to show any misrepresentation made by the company or of any deceit, fraud, or concealment, unless it be inferred from the fact that the company made no explanation of the rates or of the contents of either the bill of lading or release. The shipper merely said that the bill of lading was handed to him with the release, which he was asked to sign. Lurton, J.:

"In the leading case of Hart v. Pennsylvania R. R. Co., 112 U. S. 331 [5 Sup. Ct. 151, 28 L. Ed. 717], the right of the carrier to adjust the rate to the valuation which the shipper places upon the thing to be transported is the very basis upon which a limitation of liability, in case of loss or damage is rested. This is an administrative principle in rate making recognized as reasonable by the Interstate Commerce Commission and is the basis upon which many tariffs filed with the Commission are made. Re Released Rates, 13 Interst. Com. Com'n R. 550. It follows, therefore, that, when the carrier has filed rate sheets which show two rates based upon valuation upon a particular class of traffic, it is legally bound to apply that rate which corresponds to the valuation. If the shipper desires the lower rate, he should disclose the valuation, for in the absence of knowledge the carrier has a right to assume that the higher of the rates based upon value applies. In no other way can it protect itself in its right to be compensated in proportion to its insurance risk. But when a shipper delivers a package for shipment and declares a value, either upon request or voluntarily, and the carrier makes a rate accordingly, the shipper is estopped, upon plain principles of justice, from recovering, in case of loss or damage, any greater amount. The same principle applies if the value be declared in the form of a contract. If such a valuation be made in good faith for the purpose of obtaining the lower rate applicable to a shipment of the declared value, there is no exemption from carrier liability due to negligence forbidden by the statute when the shipper is limited to a recovery of the value so declared. The ground upon which such a declared or agreed value is upheld is that of estoppel.   *   *   *   The valuation declared or agreed upon as evidenced by the contract of shipment upon which the published tariff rate is applied must be conclusive in an action to recover for loss

or damage a greater sum. * * * To permit such a declared valuation to be overthrown by evidence aliunde the contract, for the purpose of enabling the shipper to obtain a recovery in a suit for loss or damage in excess of the maximum valuation thus fixed, would both encourage and reward undervaluations and bring about preferences and discriminations forbidden by the law. Such a result would neither be just nor conducive to sound morals or wise policies. The valuation the shipper declares determines the legal rate where there are two rates based upon valuation. He must take notice of the rate applicable, and actual want of knowledge is no excuse. The rate, when made out and filed, is notice, and its effect is not lost, although it is not actually posted in the station. Texas & Pacific Ry. v. Mugg, 202 U. S. 242 [26 Sup. Ct. 628, 50 L. Ed. 1011]; Chicago & A. Ry. v. Kirby, 225 U. S. 155 [32 Sup. Ct. 648, 55 L. Ed. 1033]. * * * That the valuation and the rate are dependent each upon the other is an administrative rule applied in reparation proceedings by the Interstate Commerce Commission. * * * In Hart v. Penn. R. R. Co., supra, parol evidence that the horses shipped were of a far greater value than the valuation agreed upon was rejected as incompetent. 'The presumption is conclusive,' said the court, 'that, if the liability had been assumed on a valuation as great as that now alleged, a higher rate of freight would have been charged. The rate of freight is indissolubly bound up with the valuation.' * * * The defendant in error must be presumed to have known that he was obtaining a rate based upon a valuation of $5 per hundredweight, as provided by the published tariff. This valuation was conclusive, and no evidence tending to show an undervaluation was admissible."

Missouri, K. & T. R. Co. v. Harriman Bros., 227 U. S. 657, 33 Sup. Ct. 397, 57 L. Ed. 690, was in error to the Court of Civil Appeals for the Fifth Supreme Judicial District of Texas. It was a case where live stock valued at the lower of two rates had been killed by the negligent derailment. Lurton, J.:

"The ground upon which the shipper is limited to the valuation declared is that of estoppel and presupposes the valuation to be one made for the purpose of applying the lower of two rates based upon the value of the cattle. This whole matter has been so fully considered in Adams Express Co. v. Croninger, 226 U. S. 491 [33 Sup. Ct. 148, 57 L. Ed. 314], and Kansas City Southern Ry. v. Carl [227 U. S. 639, 33 Sup. Ct. 391, 57 L. Ed. 683], just decided, that we only need to refer to the opinions in those cases without further elaboration. That the trial court and the Court of Civil Appeals erred in holding this stipulation null and void because forbidden by either the law or policy of the state of Texas, or by the 7th section of the act of June 29, 1906, is no longer an open question since the decisions of this court in the cases just referred to. Nor is there anything upon the face of this contract, when read in connection with the rate sheets referred to therein (of which the defendants in error were compelled to take notice not only because referred to in the contract signed by them but because they had been lawfully filed and published), which offends against the provisions of the 7th section of the act of June 29, 1906. * * * The contract here involved is substantially identical with the contract and schedule upheld in Hart v. Pennsylvania Railroad, 112 U. S. 331 [5 Sup. Ct. 151, 28 L. Ed. 717]. * * * In the case at bar it has been said that the shipper was not asked to state the value but only signed the contract handed to him and made no declaration. But the same point was made in the Hart Case, when the court said: * * * 'A distinction is sought to be drawn between a case where a shipper, on requirement, states the value of the property, and a rate of freight is fixed accordingly, and the present case. It is said that while in the former case the shipper may be confined to the value he so fixed, in the event of a loss by negligence, the same rule does not apply to a case where the valuation inserted in the contract is not a valuation previously named by the shipper. But we see no sound reason for this distinction. The valuation named was the 'agreed valuation,' the one on which the minds of the parties met, however it came to be fixed, and the rate of freight was based on that valuation and was fixed on condition that such

was the valuation and that the liability should go to that extent and no further."

Wells Fargo & Co. v. Neiman-Marcus Co., 227 U. S. 469, 33 Sup. Ct. 267, 57 L. Ed. 600, was in error to the Court of Civil Appeals from the Fifth Supreme Judicial District of the state of Texas to review a judgment against a carrier for the full value of an undelivered interstate shipment, notwithstanding the stipulation limiting the carrier's liability to a declared value. It was proved in that case that the consignors kept in their shipping office an express book containing blank express receipts. One of these was filled out in their office by their shipping clerk. When the wagon of the express company called at the shipping office the agent signed the receipt and the package was delivered to him by a boy assistant to the shipping clerk. No questions were asked as to the value and no value declared other than as shown in the receipt. It was also shown that the clerk who wrapped and marked the package did not know the value and had no actual knowledge of the graduated rates of the express company. In reversing, Lurton, J., said:

"The Court of Civil Appeals, while not in express terms denying the validity of such a stipulation limiting recovery, did so in effect, for it seems to have placed its judgment of affirmance upon the rule requiring the company's agents to ask the shipper to declare the value and, if no value is stated, that the package should be stamped, 'Value asked and not given.' This was not done. Therefore, said the court, 'the company's agent failed to perform a plain duty, * * * and it is in no attitude to complain that the shipper did not state the value.' But the shipper, in accepting the receipt reciting that the company 'is not to be held liable beyond the sum of $50, at not exceeding which sum said property is hereby valued, unless a different value is hereinabove stated,' did declare and represent that the value did not exceed that sum and did obtain a rate which he is to be assumed to have known was based upon that as the actual value. There is no substantial distinction between a value stated upon inquiry and one agreed upon or declared voluntarily. The rate of freight was based upon the valuation thus fixed, and the liability should not exceed the amount so made the rate basis."

By Act June 18, 1910, c. 309, 36 Stat. 546 (U. S. Comp. St. Supp. 1911, p. 1286), the Interstate Commerce Act was amended. Section 7 of the act, so far as material, now reads as follows:

"It is hereby made the duty of all common carriers subject to the provisions of this act to establish, observe, and enforce just and reasonable classifications of property for transportation, with reference to which rates, tariffs, regulations, or practices are or may be made or prescribed, and just and reasonable regulations and practices affecting classifications, rates, or tariffs, the issuance, form, and substance of tickets, receipts, and bills of lading, * * * the facilities for transportation, the carrying of personal, sample, and excess baggage, and all other matters relating to or connected with the receiving, handling, transporting, storing and delivery of property subject to the provisions of this act."

[2] So that by express provision the subject of passengers' baggage transported in interstate commerce has been taken over by the Congress of the United States and is subject to the regulations of the Interstate Commerce Commission, and questions arising thereunder are to be controlled by the reasoning laid down in the decisions of the Supreme Court of the United States. It is admitted in this case

that the rate of fare paid by the plaintiff was based upon the cost of transporting the passenger together with the cost of transporting 150 pounds of baggage of a value not exceeding $100, and it appears that the proper schedules were filed and the required notices given. It would therefore seem that the decisions of the Supreme Court of the United States hereinbefore cited are directly applicable to the case at bar and govern the questions of the transportation of the passenger's baggage no less than express or freight matter in interstate commerce. This is directly recognized by the Court of Civil Appeals in Texas, from which two of the hereinbefore cited cases went to the Supreme Court of the United States. Missouri, Kansas & Texas Ry. Co. v. Hailey (Tex. Civ. App.) 156 S. W. 1119. The facts are similar to the case at bar. The plaintiff purchased a ticket in Oklahoma City, Okl., to Dallas, Tex., and upon the ticket checked his trunk and received a check indorsed on which was a clause limiting liability to $100 unless a greater value was declared. The trunk was not delivered to plaintiff at destination; defendant pleaded the baggage rules and regulations filed with the Interstate Commerce Commission and published according to law, containing a limitation clause similar to the one involved in this case. The special defense was demurred to and sustained. The appellate court, in its opinion reversing the court below, said:

"Under the law of this state it is well settled that a common carrier cannot, by inserting such conditions in its bills of lading, receipts, etc., limit the shipper in case of loss, damage, or destruction to values therein 'agreed' or 'declared' but must pay the actual value or the market value as may be determined by the rule of the state as applied to the article lost, damaged, or destroyed."

It then cites the late cases in the Supreme Court of the United States and says, referring to the Croninger Case, supra:

"It will be seen by an examination of the facts in that case that there is no escape from the conclusion that the instant case comes sharply within the rules there announced. The check or receipt issued by appellant's connecting line recited that, unless a greater sum was declared by appellee and the charge for such increased valuation paid, the value of the baggage was agreed to be not in excess of $100, while the rules and regulations set out in appellant's answer contained the same provisions amplified. The difference in the facts disclosed by the pleadings in the instant case and the facts in the Croninger Case is that in the latter case the receipt or bill of lading contained the provision 'that the company shall not be liable in any event for more than the value so stated, nor for more than $50, if no value is stated,' while in the instant case there is no express provision with reference to liability."

(It should be noted in the case at bar that the ticket expressly sets forth that fact and that the check here held to be the equivalent of the express receipt repeats the limitation and gives notice that excess value must be paid for.) The court goes on:

"But it occurs to us that, since the agreement as to value is conclusive upon the shipper as held by the Supreme Court of the United States, such an agreement would necessarily preclude any claim for a greater liability than the agreed valuation, and to hold otherwise it seems to us would be to run counter to the spirit of the rules and regulations pleaded and the decision in the Croninger Case."

The plaintiff cites and relies upon Hooker v. Boston & Maine, 209 Mass. 598, 95 N. E. 945, Ann. Cas. 1912B, 669, Wells v. Great North-

ern Co., 59 Or. 165, 114 Pac. 92, 116 Pac. 1070, 34 L. R. A. (N. S.) 818, 825, and Homer v. Oregon Short Line, a Utah case, 126 Pac. 522. These cases were all decided prior to the recent decisions in the Supreme Court of the United States beginning with the Croninger Case, which hold that interstate rates and contracts with respect to liability are exclusively within the control of Congress and supersede policies and rules of the states upon such subjects. The Hooker Case, supra, admitted that the public are held to knowledge of the tariff schedules filed and published, regardless of actual knowledge or assent. It denied that the carriers were obligated to include in their schedules regulations such as those in question and adhere to them without change or modifications. But, since said case arose, section 1 of this act has been amended expressly making it the duty of carriers to make regulations in regard to baggage a part of their schedules and not to depart from them. The Wells and Homer Cases each followed the local policies of their respective states, which is that a carrier cannot make a valid contract limiting its liability for its negligence. In the opinion in the Homer Case, however, it was recognized that the question might ultimately be determined by the federal tribunals, and the court said:

"When they have spoken we will conform our rulings."

The Supreme Court of the United States has now spoken, and so the state courts must abandon their local policies and conform to that announced by federal authority. It seems useless, in view of the cases cited, to review our own state authorities.

The case presented being admittedly one of interstate commerce, upon the authorities cited and the submission at bar, judgment is directed for the plaintiff for $100, with interest from September 16, 1911. This being in substance a judgment for the defendant under the submission, the defendant is entitled to costs.

INGRAHAM, P. J., and McLAUGHLIN and LAUGHLIN, JJ., concur.

SCOTT, J. I dissent and am in favor of a judgment in favor of plaintiff. The question involved is not one of a conflict between state regulation and federal regulation of interstate commerce but the old question so often discussed in the so-called "baggage cases" whether the mere acceptance of a ticket or a baggage check on which is printed a limitation clause amounts to a declaration by the passenger that her baggage is of no greater value than the amount of the limit of the carriers' liability. The Croninger Case and others cited by my Brother CLARKE are all "merchandise" cases in which the court found a declaration by the shippers as to the value of the shipment and an acceptance of a contract for shipment knowing that it contained a limitation of liability clause. These cases have always been distinguished from "baggage cases" like the present. It is distinctly stipulated in the submission that:

"The plaintiff's attention was not called to the said schedules, Exhibits D and E, or to any provisions thereof, or to the said notices, Exhibits F and G, and she had no knowledge of the same or of their existence. The said Boston

& Maine Railroad Company did not give nor offer to give to the plaintiff any information in regard to such schedules, nor was any statement made to her, either as to their existence or contents, at the time plaintiff purchased her ticket and checked her baggage, except by the publishing, posting, and filing of the schedules and notices above mentioned. *The plaintiff did not know that the defendant's charges were based on the value of the baggage or in any way affected by the value of the baggage.*"

This concession distinctly negatives any idea that plaintiff agreed to the limitation of liability or made any representation as to the value thereof. The element of estoppel, therefore, so strongly dwelt upon in Hart v. Pennsylvania R. R. Co., 112 U. S. 331, 5 Sup. Ct. 151, 28 L. Ed. 717, is entirely absent from the case. In the Croninger Case the decision was based, in part at least, upon the statement embodied in the opinion that:

"The knowledge of the shipper that the rate was based upon the value is to be presumed from the terms of the bill of lading and of the published schedules filed with the Commission."

The court evidently referred to the presumption as one of fact. In the present case it is expressly stipulated that the passenger had no such knowledge; there is therefore no room for any presumption upon the subject. If it had been the law of this state prior to the passage of the Interstate Commerce Law and Carmack Amendment thereto that a carrier might not by any agreement limit his liability, there would be no doubt that the state law would have been superseded as to interstate commerce by the federal law. But there was not any such law in this state, and the plaintiff does not rely upon any such law. It has been the law here, and the Supreme Court of the United States says is now the law of the land under the Interstate Commerce Act, that:

"It has become an established rule of the common law, as declared by this court in many cases, that a carrier may by a fair, open, just, and reasonable agreement limit the amount recoverable by a shipper in case of loss or damage to an *agreed* value made for the purpose of obtaining the lower of two or more rates of charges proportionate to the amount of the risk."

Under this rule the question still remains since the passage of the Interstate Commerce Act, as it did before, whether, in the case of a shipment of baggage under the circumstances agreed to in the submission, there has been any *agreement* as to a limitation of liability or any representation by the passenger, express or implied, as to the value of the baggage. It may even be conceded that the plaintiff and defendant could not lawfully *agree* to carry the baggage at a lower rate than that specified in the filed schedules, but the only point of my dissent is that there was no agreement at all. With full recognition of the paramount authority of Congress to regulate respecting interstate commerce, and with a sincere desire to give full effect to its enactments, I can find nothing in the federal statutes, or in the opinions of the Supreme Court of the United States, to change the long-established rule that, in the absence of an *agreement* between the carrier and passenger as to a limitation of liability based upon value, or a representation by the passenger as to the value of his baggage, or a knowledge on his part that the price of a ticket is based upon the value of the baggage carried, the carrier is liable for the actual value if the baggage is lost by its negligence or

143 N.Y.S.—63

fault. All that has been decided is that, when Congress, by the Interstate Commerce Law, authorized contracts for the limitation of the liability of common carriers, its enactment superseded and abrogated, as to interstate shipments, the provisions of any state law undertaking to forbid such contracts. That, in my opinion, does not touch the real question in this case.