CECILE GIFFORD MINTURN, Respondent, v. THE NEW YORK CENTRAL RAILROAD COMPANY, Appellant.

Fourth Department, March 9, 1927.

Carriers — carriers of passengers — action to recover damage to baggage of plaintiff — plaintiff's maid signed valuation slip limiting value to $100 — excess baggage was carried at valuation of $120 — entire transportation was within New York State — damage occurred while baggageman was endeavoring to draw truck across railroad tracks — train ran into truck — evidence tends to show that defendant should have employed more than one baggageman at station and jury so found — jury found also that failure to employ more than one baggageman was willful omission — plaintiff claimed right to recover actual damages and penalty under Railroad Law, § 67, and Public Service Commission Law, § 40 — whether plaintiff made contract is immaterial — failure to post notice of tariff, under Public Service Commission Law, § 28, does not affect validity of tariff — interstate tariff is applicable and provides for maximum limitation of $100 — Public Service Commission Law, § 38, fixing maximum at $150, is ineffective — plaintiff's contention that she could recover all damage and penalty of $50 is not sustained — plaintiff's construction of statute violates interstate tariff — total actual value of baggage not found — new trial granted.

This is an action to recover damage to baggage shipped from New York city to Westfield, N. Y., on a single passenger ticket. Plaintiff's maid signed

valuation slip limiting value of baggage to $100; excess baggage was valued at $120. While the defendant's baggageman at ;the Westfield station was drawing a baggage truck across the tracks at that' station, a freight train struck the truck and partially destroyed plaintiff's baggage. The defendant employed only one baggageman at the Westfield station. The plaintiff contends that the damage was caused by the failure to provide sufficient help and facilities for handling baggage, and as a result of the willful omission on the part of the defendant. Plaintiff, therefore, contends that she is entitled, under section 67 of the Railroad Law and section 40 of the Public Service Commission Law, to recover actual damage, irrespective of the limitation of valuation, and, in addition thereto, the sum of $50 as a penalty. The interstate tariff applies to the defendant railroad and to the present case.

Whether or not the plaintiff entered into a contract in respect to the valuation of the baggage is immaterial, for the rights of the parties are controlled by the interstate tariff, and a contract violating that tariff could not be enforced.

The failure of the defendant to comply with section 28 of the Public Service Commission Law, requiring the posting of notices as to the tariff, did not affect the validity of the tariff.

The interstate tariff fixes the maximum limitation value of a passenger's baggage on a single ticket at $100. Section 38 of the Public Service Commission Law fixes a limitation value at a maximum of $150. In so far as the Public Service Commission Law conflicts with the interstate tariff it is not effective, for the interstate tariff governs intrastate shipments as well as interstate shipments over interstate railroads.

Although the jury found upon competent evidence that the failure of the defendant to employ more help at the Westfield station constituted a willful omission and a violation of section 67 of the Railroad Law and section 40 of the Public Service Commission Law, the plaintiff cannot recover the actual damage suffered and a penalty of fifty dollars, for said sections have nothing to do with the limitation of liability under a contract in accordance with section 38 of the Public Service Commission Law, or under the interstate tariff. Furthermore, if plaintiff's contention were correct, there would be a conflict between said statutes and the interstate tariff, and in that case the interstate tariff would control and the State laws would become ineffective.

Plaintiff's damage must be computed proportionately to the total valuation of the baggage checked, which was $220, and since the total actual value of the baggage is not found, a new trial must be granted.

APPEAL by the defendant, The New York Central Railroad Company, from a judgment of the County Court of the county of Chautauqua in favor of the plaintiff, entered in the office of the clerk of said county on the 21st day of November, 1925, upon the verdict of a jury, and also from an order entered in said clerk's office on the 24th day of March, 1926, denying defendant's motion for a new trial made upon the minutes.

*Mark N. Turner*, for the appellant.

*Marion H. Fisher*, for the respondent.

SEARS, J. On the 14th day of July, 1922, the plaintiff, through the agency of her maid Emma Long, caused three pieces of baggage consisting of two trunks and a hat box to be checked at defendant's

Grand Central Terminal in the city of New York, to Westfield, N. Y., on a single passenger ticket. The route is entirely within the State of New York. At the time of checking the baggage an employee of the defendant presented a valuation slip to the maid for signature. When offered in evidence, the paper read as follows:

" THE NEW YORK CENTRAL RAILROAD COMPANY
" West Shore Railroad
" Station            (Date) 7/14 1922
" VALUATION OF BAGGAGE

" The property covered by Checks numbered 118417–8–412192 is valued at not exceeding $100 and in case of loss or damage to such property, claim will not be made for a greater amount.
" Number of passengers 1

" (Signed)        EMMA LONG,
" *Shipper.*

" Baggage of excess value will be charged for subject to tariff regulations."

The maid admitted signing her name on this paper but testified that she did not know its contents when she signed it. The defendant's employee who obtained her signature testified that the figures " 100 " relating to the valuation, and the figure " 1 " relating to the number of passengers were not in his handwriting. It does not appear in the evidence when these figures were placed on the paper. The baggage was safely transported by the defendant to the Westfield station where it was taken from the train and placed upon a truck on one of the platforms adjoining the tracks. To reach the baggage room from this platform, it was necessary to cross several tracks at grade. Within a few days previous to the time when this baggage arrived at Westfield the defendant had placed screenings of stone or slag as ballast along its tracks at the Westfield station including the places where the crossover from the platform upon which the baggage was unloaded to the baggage room was laid. It was thus necessary for the truck with baggage to be drawn or pushed over these loose screenings. At the time the plaintiff's baggage arrived and throughout a large portion of each day, the defendant employed only one man to handle baggage at the Westfield station. When in the course of his duty this man attempted to draw the truck on which plaintiff's trunks had been placed over the crossover from the platform where the trunks had been unloaded from the train to the baggage room, the loose screenings of stone proved such an obstruction that the truck with its load was brought to a stop on one of the defendant's tracks. At this time a freight train was approaching on this particular track and before the

truck with its load could be removed the train struck the truck and injured both of plaintiff's trunks and their contents. The hat box escaped damage.

There is evidence that the defendant's business at the Westfield station was such as to require the employment of more than one baggageman at all times. In fact the employee who was handling the plaintiff's trunks at the time of the accident had before this requested additional help from his superior in the defendant's service.

The jury has not only found a general verdict for the plaintiff for the full amount of her loss but has specifically answered a number of questions submitted to it by the court. In this way the jury has found, among other things, that the baggage of plaintiff was damaged while in defendant's custody as result of the negligence of defendant; that plaintiff's baggage was damaged as the result of defendant's failure to furnish sufficient help and facilities for the handling of the baggage of passengers at the Westfield station at the time in question, and that such failure was the willful act or omission of the defendant in the sense that it was done knowingly and consciously.

The plaintiff bases her cause of action (1) upon the common-law obligation of the railroad as insurer and bailee, and (2) upon the provisions of section 67 of the Railroad Law, read in connection with section 40 of the Public Service Commission Law. Section 67 of the Railroad Law is as follows: " Any person whose duty it is for or on behalf of the common carrier to handle, remove, or care for the baggage of passengers, who shall recklessly or wilfully injure or destroy any trunk, valise, box, bag, package or parcel, while loading, unloading, transporting, delivering or storing the same, or any railroad corporation, which shall knowingly keep in its employment any such wilful or reckless person, or which shall permit any injury or destruction of such property, through failure to provide sufficient help and facilities for the handling thereof, shall pay to the party injured thereby the sum of fifty dollars, in addition to such damages."

Section 40 of the Public Service Commission Law is in these words: " In case a common carrier shall do, cause to be done or permit to be done any act, matter or thing prohibited, forbidden or declared to be unlawful, or shall omit to do any act, matter or thing required to be done, either by any law of the State of New York, by this chapter or by an order of the Commission, such common carrier shall be liable to the persons or corporations affected thereby for all loss, damage or injury caused thereby or resulting

therefrom, and in case of recovery, if the court shall find that such act or omission was wilful, it may in its discretion fix a reasonable counsel or attorney's fee, which fee shall be taxed and collected as part of the costs in the case. An action to recover for such loss, damage or injury may be brought in any court of competent jurisdiction by any such person or corporation."

It is the position of the defendant upon this appeal that its liability is limited to the valuation upon which the rate for carriage was determined in accordance with its schedule of rates, or tariff, as well as under the provisions of section 38 of the Public Service Commission Law (as amd. by Laws of 1913, chap. 344), the pertinent part of which is as follows: " * * * Every common carrier, baggage company, transfer company, and railroad corporation shall be liable for loss, damage and injury to property carried as baggage whether in connection with the transportation of the owner or not, up to the full value and regardless of the character thereof, but the value in excess of one hundred and fifty dollars shall be stated upon delivery to the carrier, and a written receipt stating the value shall be issued by the carrier, who may make a reasonable charge for the assumption of such liability in excess of one hundred and fifty dollars and for the carriage of baggage exceeding one hundred and fifty pounds in weight upon a single ticket or receipt.   *   *   *."

The plaintiff on the other hand challenges this claim of the defendant to a limitation of liability on several grounds: (a) Because, as she claims, no contract fixing a value was entered into by her or on her behalf; (b) because no limitation is applicable to her on account of a failure on defendant's part to comply with the terms of section 28 of the Public Service Commission Law in relation to the posting of notices as to where the tariff might be examined; (c) because the tariff filed by the defendant provides for a valuation at $100 as a minimum, while section 38 of the Public Service Commission Law contemplates a minimum of $150; (d) because a valuation in accordance with the tariff, or pursuant to the provisions of section 38 of the Public Service Commission Law has no reference to the amount of damages allowable under the provisions of section 67 of the Railroad Law read in connection with section 40 of the Public Service Commission Law.

At the very foundation of this case lies the principle that a contract between a shipper and a carrier limiting the carrier's liability as an insurer and bailee for damage to a shipment to a value agreed upon for the purpose of fixing the rate for which the shipment is to be made is valid. (*Greenwald* v. *Barrett,* 199 N. Y. 170; *Zimmer* v. *N. Y. C. & H. R. R. R. Co.,* 137 id. 460;

*Adams Express Co.* v. *Croninger,* 226 U. S. 491.)    Such limitation is effective even when the loss is due to the carrier's negligence. (*Boyle* v. *Bush Terminal R. R. Co.,* 210 N. Y. 389; *Gardiner* v. *N. Y. C. & H. R. R. R. Co.,* 201 id. 387; *Tewes* v. *North German Lloyd Steamship Co.,* 186 id. 151.)

The pertinent provisions of the defendant's filed tariff of rates in this case are as follows:

Rule 10, paragraph " (a)    *   *   *   one hundred and fifty (150) pounds of baggage, not exceeding one hundred dollars ($100.00) in value, may be checked without additional charge for each adult passenger,    *   *   *   except that the liability of the carrier will not exceed the value declared by the passenger under Rule 11, paragraph (d)."

Rule 11, paragraph " (d)    *   *   *   the shipper of baggage or other property permitted to be transported must at the time of delivery to carrier declare in writing the value thereof on form prescribed by checking carrier as below."    (Here follows the form used in this case and quoted above.)

Rule 10, paragraph " (b).    Passengers paying charges prescribed in Rule 11 (b) for excess weight baggage will be entitled to an additional value allowance of 66 2-3 cents for each pound of excess weight on which charges are paid    *   *   *."

Rule 18. " The amount of any loss or damage for which any carrier is liable shall be computed on the basis of the value of the baggage or property at the place and time of shipment.    *   *   *

" In the case of loss or damage to a portion of the articles contained in baggage, the carriers will be liable only for that proportion of the maximum liability for total loss or total damage which the value of the articles lost or damaged bears to the total value of all of the articles contained in the baggage checked."

There was an excess weight of 180 pounds above the minimum of 150 pounds for which the plaintiff paid under the provisions of rule 11 (b).    Under the tariff, therefore, the plaintiff was entitled to a valuation for excess weight of $120 which with the minimum of $100 of value makes a total valuation of $220 upon which basis the carriage charge was calculated.

The plaintiff, however, challenges the applicability of the tariff to her.    We must, therefore, consider the several grounds which may be advanced on plaintiff's behalf.

(a) She asserts that she made no contract in respect to value. It must be conceded on the evidence that neither the plaintiff nor her agent consciously agreed to any valuation of the shipment whatever.    It is only by implication and construction that the plaintiff can be said to have agreed to a value.    If a conscious

agreement for valuation and limitation of liability is a .condition precedent to effective enforcement of the tariff provision, the defendant's position is untenable. Such cannot be the case. The defendant as a common carrier has been compelled to establish a schedule of rates. All deviations from its tariff are discriminations. Discriminations are prohibited. No agent of the defendant may directly or indirectly waive the terms of the tariff. Even a specific statement by an agent at the time of shipment in conflict with the tariff will not bind the carrier. (*New York Central ·R. R. Co.* v. *Federal Sugar Refining Co.*, 235 N. Y. 182; *New York Central R. R. Co.* v. *Ross Lumber Co.*, 234 id. 261; *Willson* v. *American R. Exp. Co.*, 204 App. Div. 59; affd., 239 N. Y. 562.) To treat the existence or absence of a contract in the ordinary sense as the controlling factor in determining whether a provision of a tariff is applicable would result in permitting waivers of the terms of the tariff by agents of the carrier. To insure uniformity, every passenger and shipper must, therefore, be bound by the terms of the tariff and must be treated as though acting with full knowledge of all its provisions. (*Levett* v. *Draper*, 194 App. Div. 632; *Willson* v. *American R. Exp. Co., supra; Barstow* v. *N. Y., N. H. & H. R. R. Co.*, 158 App. Div. 665; *Burke* v. *Union Pac. R. R. Co.*, 226 N. Y. 534; affd., *sub nom. Union Pac. R. R. Co.* v. *Burke*, 255 U. S. 317; *Boston & Maine R. R.* v. *Hooker*, 233 id. 97.)

The decision in *Robinson* v. *N. Y. C. & H. R. R. R. Co.* (145 App. Div. 391; affd., 203 N. Y. 627, upon the opinion of Mr. Justice MILLER in the Appellate Division) as is pointed out in *Levett* v. *Draper* (*supra*) is not an authority to the contrary, but, at most, expresses a doubt on the subject.

The absence of knowledge of the terms of the tariff and the defective form of the valuation slip become immaterial. Carriage was charged and paid at a value of $220. The effective tariff provided that plaintiff's claim for damages should be calculated upon this basis and that defendant's liability should not exceed such sum. There was nothing in the arrangement for the shipment to render the tariff inapplicable to this case.

(b) The jury made a special finding that the defendant had failed to comply with the terms of section 28 of the Public Service Commission Law by omitting to post the notices required by the terms of that statute. On this circumstance the plaintiff contends that the tariff was not applicable to her. Assuming for the moment that the provisions of section 28 of the Public Service Commission Law (as amd. by Laws of 1921, chap. 134) relate to the filing of this tariff which covers both interstate and intrastate commerce, we, nevertheless, are of the opinion that the omission to

post the notices does not result in invalidating the tariff. It is not necessary to pass on the question as to what damages might accrue from the failure to post the notices; the question here relates solely to the effect of the omission on the validity of the tariff. The question is substantially the same as that passed upon by the Supreme Court of the United States in *Texas & Pacific R. Co.* v. *Cisco Oil Mill* (204 U. S. 449). The Supreme Court of the United States there held that the filing of the schedule of rates with the Interstate Commerce Commission and the furnishing of copies by the railroad company to its offices incontrovertibly evidenced that the tariff of rates contained in the schedule had been established and put in force and that the requirement in section 6 of the United States Interstate Commerce Act (24 U. S. Stat. at Large, 380, § 6, as amd. by 25 id. 855, chap. 382, § 1; since amd. by Hepburn Act [34 id. 586], § 2; now Interstate Commerce Act, § 6, subd. 1, as amd. by Transportation Act [41 id. 483], § 409; United States Code, tit. 49, § 6, subd. 1), analogous to the provision in section 28 of the Public Service Commission Law in relation to posting copies of the schedules in the railway offices was not a condition precedent to the establishment of the tariff of rates but was a provision based upon the existence of an established rate, and had for its object the affording of special facilities to the public to ascertain the rates actually in force. The court there used this significant language: " To hold that the clause had the far-reaching effect claimed would be to say that it was the intention of Congress that the negligent posting by an employé of but one instead of two copies of the schedule, or the neglect to post either, would operate to cancel the previously established schedule, a conclusion impossible of acceptance." The subject was re-examined and the conclusion reaffirmed and reiterated in *United States* v. *Miller* (223 U. S. 599). The provision in respect to posting in section 28 of the Public Service Commission Law must be similarly treated. In fact the very language of that section discloses the intention of our Legislature that the practice under the State law was to be assimilated to that of interstate carriers under the Federal law. We adopt the interpretation of the provisions of the Interstate Commerce Act as applicable here, and hold that the failure to post the notices does not render the tariff invalid or inoperative. We find nothing to the contrary in the authorities.

In *Levett* v. *Draper* (*supra*) there is a discussion of the sufficiency of the posting of the notices in that case, but as it was held that sufficient notices were posted it was unnecessary there to consider the effect of a failure to post.

(c) In the tariff the limitation of value of a passenger's baggage

on a single ticket without additional charge is to a maximum of $100. Section 38 of the Public Service Commission Law authorizes such valuation to a maximum of $150. On this discrepancy an argument for the invalidity of the tariff as in conflict with our statute may be urged. In this particular case because of the excess weight, the tariff valuation is $220, and as applied to the particular case there is no inconsistency. Nevertheless there is a difference as to the maximum valuation allowable for free baggage. The schedule of rates before us here is an interstate tariff of the Interstate Commerce Commission and effective under the laws of the United States. At the time the tariff was received in evidence it was stated without challenge that it was an Interstate Commerce Commission tariff and the fact appears from the tariff itself. It covers interstate as well as intrastate shipments over many railroad systems. Under the authorities in the Supreme Court of the United States we are constrained to hold that the terms of the tariff, although in conflict with State laws, are, nevertheless, effective and supersede the State law. (*State of New York* v. *United States,* 257 U. S. 591; *Minnesota Rate Cases,* 230 id. 352.) Section 38 of the Public Service Commission Law in so far as it provides for a maximum of free baggage of $150 is clearly in conflict with the terms of the tariff and is, therefore, ineffective in cases where such tariff provisions are applicable.

(d) The plaintiff relies upon section 67 of the Railroad Law to take the case out of the limitation resulting from the tariff provision, and urges that the loss having occurred in the way referred to in that section, the plaintiff is entitled to recover the sum of fifty dollars in addition to the damages which she has suffered, and construes the words " such damages " in that statute as meaning all damages without regard to the valuation provisions of the tariff. She also urges that section 40 of the Public Service Commission Law lends support to this construction.

Section 67 of the Railroad Law is a penal statute and is to be strictly construed. It may be urged in favor of defendant's general position, therefore, that the provision for the allowance of damages in addition to the fixed penalty relates only to damages otherwise recoverable; that the provision has no relation to the amount of recovery when the value has been fixed so as to be binding on the claimant as in this case, and that section 40 of the Public Service Commission Law has nothing to do with the limitation of liability under a contract in accordance with section 38 of the Public Service Commission Law, or under a tariff. (*Rosin* v. *Lidgerwood Mfg. Co.,* 89 App. Div. 245.)

We need not pass on the construction of these statutes. If section 67 of the Railroad Law and section 40 of the Public Service Com-

mission Law are given the construction claimed by the plaintiff, they are in conflict with the provisions of the tariff, and are ineffective in a case covered by such tariff. It is immaterial that the statutes so construed would have the effect of aiding rather than interfering with commerce. (*Charleston & Western Carolina R. Co.* v. *Varnville Furniture Co.*, 237 U. S. 597.) The Congress through the agency of the Interstate Commerce Commission has determined by the acceptance of the tariffs what shall be the limit of the defendant's liability. The subject under the authorities already cited is within the jurisdiction of the Interstate Commerce Commission. Such determination of the Federal agencies is controlling and the construction advanced by the plaintiff, if accepted, would only result in making the laws ineffective.

On the whole case, therefore, we find that the plaintiff's damages must be computed proportionately to a total valuation of the baggage checked of $220. As the total actual value of the baggage is not found, it will be necessary to order a new trial.

The judgment and order should be reversed and a new trial granted, with costs to the appellant to abide the event.

All concur. Present — HUBBS, P. J., CLARK, SEARS, CROUCH and TAYLOR, JJ.

Judgment and order reversed on the law and new trial granted, with costs to appellant to abide event.