# Keystone Publishing Co., Appellant, *v.* Pennsylvania Railroad Co.

*Carriers—Interstate commerce—Freight—Nondelivery — Notice —Liability—Initial carrier—Bill of lading—Carmack amendment —California Civil Code, section 2120.*

An agreement of shipper and carrier as to terms of their contract for transportation of freight in interstate commerce is subject to interstate commerce legislation, and any restrictions upon liability inconsistent with such legislation would be inoperative.

The effect of the Carmack amendment (Act of August 9, 1916) is to extend the common law liability of the initial carrier of an interstate shipment of freight, so as to hold with the same effect as if the initial carrier owned a continuous line from the place of shipment to the destination.

When goods have arrived at their destination, and a reasonable time has elapsed for the consignee to take them, the relation of the carrier, as such, ceases and thereafter is that of warehouseman only.

The Carmack amendment operates only upon carriers, and does not extend their liability as warehousemen.

In the absence of any specific condition of liability prescribed by statute, the conditions of the bill of lading are controlling, and additional obligations cannot be imputed to the carrier which are not imposed by the common law.

A carrier, having given the consignee notice of the arrival of freight at its destination, in accordance with the requirements of the bill of lading, is under no obligation to notify the consignor of the failure by the consignee to receive them.

The California Civil Code, section 2120, requires the warehouseman to whom a carrier delivers freight, which has remained uncalled for, to notify the consignee, but does not require notice to the consignor.

A shipper of a package of books sent from Philadelphia to San Francisco cannot recover from the initial carrier the value of the package on the ground that it was sold by a warehouseman in San Francisco to whom it had been delivered by the delivering carrier; the sale having been after one notice and in compliance with the law of the place where delivery was to have been made and on account of failure of the consignee to receive the shipment.

Argued October 14, 1921. Appeal, No. 178, Oct. T., 1921, by plaintiff, from judgment of Municipal Court of Philadelphia, May T., 1920, No. 197, in favor of defendant in case tried by the court without a jury in suit of Keystone Publishing Company v. Pennsylvania Railroad Company. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Trespass to recover damages for loss of a shipment of books. Before BARTLETT, J., without a jury.

The facts are stated in the opinion of the Superior Court.

The court found for the defendant, and entered judgment thereon. Plaintiff appealed.

*Errors assigned* were refusal of plaintiff's request for binding instructions, dismissing motion for judgment non obstante veredicto and entering judgment for defendant.

*Joseph J. Brown,* and with him *Henry P. Brown,* for appellant.

*Charles Myers,* and with him *Sharswood Brinton,* for appellee.

OPINION BY HENDERSON, J., March 3, 1922:

On July 30, 1917, the plaintiff company delivered to the defendant a package of books consigned to the Keystone Publishing Company, San Francisco, California. The initial carrier's line did not extend to San Francisco and delivery was therefore made to a connecting carrier. The books arrived in San Francisco, August 29, 1917, and were removed from the car and stored in the freight house of the terminal carrier. The name of the consignee did not appear in the city directory nor in the telephone directory of San Francisco and the local address could not be found by the carrier's agent. On

the next day after the merchandise arrived, a notice of that fact addressed to "Keystone Publishing Company, General Delivery," was deposited in the mail, and October 5, 1917, a postal card notice addressed to the consignee was duly mailed. Neither of these notices was received by the consignee. On November 3, 1917, the books were deposited by the terminal carrier in a public warehouse in the City of San Francisco. The warehouse sent a notice to the consignee by registered letter, mailed January 12, 1918, that the books would be sold at public auction on February 14, 1918. This notice was returned undelivered. The books were sold at public auction on February 14, 1918. The plaintiff's action is brought against the defendant to recover damages because of its neglect to give the plaintiff notice that the merchandise had not been removed by the consignee, or that it had been placed in a warehouse. It is not disputed that the contract for transportation was performed to the extent that the goods were delivered in good condition in the freight house of the terminal railroad company at the destination of the shipment. The plaintiff's contention is that the obligation of the initial carrier was to transport, and in case of nondelivery to the consignee, to give notice to the consignor. The obligation was one of contract as affected by the interstate commerce legislation, and particularly the Act of August 9, 1916, which provides that the initial carrier shall be liable to the lawful holder of the bill of lading for any loss, damage, or injury to the property entrusted to it, caused by it or any common carrier, railroad or transportation company to which such property may be delivered, or over whose line or lines such property may pass. Apart from this federal regulation the obligation of the initial carrier would have terminated when the merchandise was delivered in good order to the first connecting carrier. The second paragraph of the bill of lading expressly declared that the agreement for transportation applied only to the plaintiff's own line except

as otherwise provided by law, and that with respect to the portion of the route beyond its own line, it acted only as agent for the shipper. It also provided that the initial carrier should not be liable for loss, damage, or injury not occurring on its own road except as such liability might be imposed by law. These restrictions of liability are of course inoperative under the Carmack amendment, as that enactment extends the responsibility of the initial carrier to the termination of the shipment. The liability of the defendant may therefore be treated as if its line extended to the place to which the merchandise was consigned. In so far as the bill of lading is inconsistent with the requirements of the federal legislation, it must be disregarded. In the respects in which it is consistent with such legislation it is binding on the parties. It may be assumed that the carrier was bound to deliver the freight at the receiving station of the terminal carrier and to store it there for a reasonable time in order that the consignee might remove it. In the absence of any specific condition of liability prescribed by statute the conditions of the bill of lading are controlling, and additional obligations cannot be imputed to the carrier which are not imposed by the common law. It is clear that no obligation rests on the defendant because of the omission of the terminal carrier to notify the consignor that the merchandise had not been taken out by the consignee unless that obligation arises under the federal statute, for without that the parties made a law for themselves in the contract of shipment. Notice having been given to the consignee in the method prescribed by the bill of lading as provided in its fifth section, no other obligation of notice existed by the terms of the contract; and the goods having been delivered to the public warehouse in accordance with the stipulation of the bill of lading, after the lapse of two months from delivery at the station, the responsibility of the defendant as a carrier terminated unless the federal regulations extended it. The Carmack amendment operates on the

defendant as a common carrier—it relates to transportation and affects the subject while the relation of carrier exists, but when the merchandise has reached its destination and has been stored in the carrier's warehouse, and a reasonable time has elapsed within which the consignee may take it away, the relation of the carrier to the operation ceases. The relation then becomes that of warehouseman only : McCarty v. The New York & Erie R. R. Co., 6 Casey 247; Shenk v. Phila. Steam Propeller Co., 60 Pa. 109. The provisions of the Carmack amendment with respect to this changed relation of the carrier to the merchandise are not incompatible with the provisions of the bill of lading and resort must be had to that to ascertain the relation of the parties. By reference to section 5 thereof it will be seen that the carrier had the option to store the merchandise under its responsibility as warehouseman only, or to store the same in a public warehouse at the cost of the owner and without liability on the part of the carrier. The terminal carrier acted under this authority and by so doing released itself from further responsibility for the custody of the books. The contract of the defendant was therefore performed according to its terms. The federal statute does not expressly impose on the carrier the obligation to notify a consignor of the failure of the consignee to receive merchandise, nor has our attention been directed to any case holding that such a duty is implied therefrom. On the contrary, authorities are not lacking that it was not the purpose of the Carmack amendment to extend the common law liability of a carrier except as to the provision that until the transportation is terminated the liability of an initial carrier should continue with the same effect as if it owned a continuous line from the place of shipment to the destination of the freight: Hicks v. The Railroad Co., 131 Ia. 295; Norfolk & Western Ry. Co. v. Stuart's Draft Milling Co., 109 Va. 184; Hogan Milling Co. v. Union Pacific Ry. Co., 91 Kansas 783; Adams Seed Co. v. Chicago & Great Western R. R.

Co., 165 N. W. 367; Model Mill Co. v. Carolina C. & O.
R. R. Co., 136 Tenn. 211. It was held in Adams Express
Co. v. Croninger, 226 U. S. 491, that the liability imposed
by the Carmack amendment plainly implies a liability
for some default in its common law duty as a common
carrier. The general principles stated in Norway Plains
Co. v. B. & M. Co., 1 Gray 263; Gregg v. Illinois Cen-
tral R. R. Co., 147 Ill. 550; Kight v. Wrightsville T. &
R. Co., 127 Ga. 204; Shenk v. Phila. Steam Propeller
Co., supra, are in harmony with the foregoing authori-
ties.

In undertaking the transportation, the defendant be-
came liable "for any loss, damage or injury to such prop-
erty caused by it" or by any connecting carrier to whom
the goods would be delivered, but this merely connected
the initial carrier with responsibility to the end of the
route. The nature of its responsibility was established
by the contract of transportation and the obligations
existing under its common law duty. It does not appear
from the evidence that the defendant omitted to perform
any of the acts required by any federal statute, or at
common law, or by its contract. Within a reasonable
time allowed for the convenience of the consignee, the
freight passed into the custody of the terminal carrier as
a warehouseman and finally into a storage warehouse,
and if any negligence is attributable in the premises, it
should be imputed to the warehouseman not to the car-
rier. The case is one not of a refusal to accept the
freight, but of an omission to receive and take it away.
On the theory of an obligation to notify the consignor a
considerable time necessarily elapsed before the custo-
dian of the freight could reasonably have assumed that
it would not be called for and at that time the relation
of carrier had ceased. Thereafter the plaintiff's redress
was against the person or company into whose lawful
custody the property came and whose duty could be made
to appear to notify the consignor of the failure of the con-
signee to receive the goods. It should be noticed in that

connection that provision is made in section 2120 of the California Civil Code, offered in evidence by the defendant, with respect to the notice to be given when freight is not delivered. It provides as follows: "If for any reason a carrier does not deliver freight to the consignee or his agent personally, he must give notice to the consignee of its arrival and keep the same in safety upon his responsibility as a warehouseman until the consignee has had a reasonable time to remove it. If the place of residence or business of the consignee be unknown to the carrier, he may give the notice by letter, dropped in the nearest post office." No reference is made therein to a notice to the consignor and if the state statute operates on the transaction the terminal company performed its duty as disclosed by the evidence. As the federal legislation has not assumed to regulate this particular subject, it would seem to be within the control of the State. That such a notice was sufficient is shown in Braunton & Robertson v. Southern Pacific Company, 83 Pacific 265.

The case was decided in the court below on the construction given to the provision of the bill of lading limiting the time within which action for damages thereon might be brought. The conclusion of the learned judge is not without support, but we have considered it advisable to dispose of the case on grounds which go to the foundation of the cause of action. Our consideration of the case leads us to the conclusion that the plaintiff's action cannot be maintained.

The judgment is therefore affirmed.