McCarthy et al., Appellants, *v.* P. R. R. Co.

Argued October 22, 1929.

Before PORTER, P. J., TREXLER, KELLER, LINN, GAWTHROP, CUNNINGHAM and BALDRIGE, JJ.

*Geo. C. Fay,* and with him *Millard K. Goe* and *Frank A. Chalmers,* for appellant.

*Chas. Woods Coulston,* and with him *J. Howard Rhoads,* for appellee.

OPINION BY BALDRIGE, J., January 29, 1930:

On March 27, 1928, the plaintiff company shipped two hundred and seventy-five sacks of potatoes on an order bill of lading consigned to its own order, "Notify Dance Brokerage Company, Terminal Warehouse delivery, Baltimore, Md." The initial carrier was the Boston and Maine and the shipment was routed via Delaware and Hudson and Pennsylvania Railroad. The bill of lading attached to a draft for the value of the potatoes was sent to a Baltimore bank with instructions not to surrender the bill of lading until the draft was paid. The car arrived at Baltimore on March 31, 1928; notice of its arrival was sent by the appellee to the Dance Brokerage Company, the notify party designated in the bill of lading, on the same date. The bill of lading was not presented within the free time (48 hours) allowed by the tariffs and the potatoes were removed from the car and placed in the Terminal Warehouse. It was admitted on record that the Calvert Street Station, Baltimore, includes the facilities of the Terminal Warehouse Company of Baltimore for the receipt and delivery of freight.

The shipment remained uncalled for and on April 20, 1928, the consignor was notified that the potatoes had not been removed and disposal orders were requested. This was followed on May 10th with a telephone notification that unless disposal orders and bill of lading were received by May 14, 1928, the shipment would be sold. The appellants refused to give orders and surrender the bill of lading and the shipment was sold and the net proceeds paid to the appellants.

The appellants brought this action claiming that the railroad company wrongfully unloaded the potatoes from the car and delivered them to the Terminal Ware-

house without a surrender of a bill of lading and without notifying the consignor, thereby converting the property to the injury of the appellants.

No authority is cited, nor are we able to find one that supports this contention. If the unloading of a shipment by the railroad company at its destination from a car to a freight station, without the surrender of a bill of lading, constitutes a conversion, the railroad companies would be very seriously interfered with in the movement of their cars and in keeping their freight stations and yards free from congestion.

Section 4 (a) of the bill of lading provides as follows:

"Property not removed by the party entitled to receive it within the free time allowed by tariffs, lawfully on file (such free time to be computed as therein provided), after notice of the arrival of the property at destination or at the port of export (if intended for export) has been duly sent or given and after placement of the property for delivery at destination has been made, may be kept in vessel, car, depot, warehouse or place of delivery of the carrier, subject to the tariff charge for storage and to carrier's responsibility as warehouseman, only, or at the option of the carrier, may be removed to and stored in a public or licensed warehouse at the place of delivery or other available place, at the cost of the owner, and there held without liability on the part of the carrier, and subject to a lien for all freight and other lawful charges, including a reasonable charge for storage."

This shipment was handled in compliance with the express agreement of the parties in the bill of lading. The removal of the potatoes from the car to the warehouse of the railroad company was not a delivery; the shipment remained in its custody and under its control, ready for delivery on surrender of the bill of lading. There is no evidence to show that the appellee

was not prepared at all times to fulfill the terms of its contract of carriage.

In Keystone Publishing Co. v. Pennsylvania Railroad Co., 78 Pa. Superior Ct. 486, this court said on page 489; "It may be assumed that the carrier was bound to deliver the freight at the receiving station of the terminal carrier and to store it there for a reasonable time in order that the consignee might remove it. In the absence of any specific condition of liability prescribed by statute the conditions of the bill of lading are controlling and additional obligations cannot be imputed to the carrier which are not imposed by the common law. It is clear that no obligation rests on the defendant because of the omission of the terminal carrier to notify the consignor that the merchandise had not been taken out by the consignee unless that obligation arises under the federal statute, for without that the parties made a law for themselves in the contract of shipment. Notice having been given to the consignee in the method prescribed by the bill of lading as provided in its fifth section, no other obligation of notice existed by the terms of the contract; and the goods having been delivered to the public warehouse in accordance with the stipulation of the bill of lading, after the lapse of two months from delivery at the station, the responsibility of the defendant as a carrier terminated unless the federal regulations extended it."

Notice had been given of the arrival at the receiving station of the potatoes in the method prescribed to the party designated in the bill of lading and no other obligation of notice then existed. After waiting a reasonable time without receiving the bill of lading or any response from the notify party, notice was given to the consignor. The appellee discharged its full duty and if any loss was sustained by the plaintiffs,

it was due to their failure to take such steps as were necessary to protect their property.

The assignments of error are overruled and judgment is affirmed.