**SOUTHERN RAILWAY CO. et al.**

**v.**

**UNITED STATES of America and Interstate Commerce Commission.**

**NATIONAL MOTOR FREIGHT TRAFFIC ASSOCIATION, INC., et al.**

**v.**

**UNITED STATES of America and Interstate Commerce Commission.**

**Civ. Nos. 2135, 2136.**

United States District Court
E. D. Virginia,
At Alexandria.

Argued Jan. 27, 1961.

Decided May 11, 1961.

Howard W. Smith, Jr., Alexandria, Va., Thomas H. Maguire, Chicago, Ill., J. Edgar McDonald, New York City, William F. Zearfaus, Philadelphia, Pa., for plaintiffs in Civil Action 2135.

Bryce Rea, Jr. (Watkins & Rea), Washington, D. C., F. G. Freund, Washington, D. C., for the plaintiffs in Civil Action 2136.

Leonard S. Goodman, Washington, D. C., Robert W. Ginnane, Gen. Counsel, Washington, D. C., for the Interstate Commerce Commission.

Richard H. Stern, Washington, D. C., Robert A. Bicks, Asst. Atty. Gen., and Joseph S. Bambacus, U. S. Atty., Richmond, Va., for the United States.

Philip N. Brophy, Falls Church, Va., and Robert N. Burchmore (Burchmore, Good & Bobinette) Chicago, Ill., for defendant-intervenor, National Industrial Traffic League.

Before SOBELOFF, Circuit Judge, and LEWIS and BRYAN, District Judges.

ALBERT V. BRYAN, District Judge.

Here the Interstate Commerce Commission has found it has "no authority to authorize" a freight classification rule of general application whereby a rail- or motor-carrier's liability for loss or damage to a shipment is restricted to a specified maximum amount, which would be considered the value thereof, unless a greater value is declared or agreed upon at the time of the delivery of the shipment to the carrier. In the latter event, under the rule there would be paid, in addition to the existing, established rate for the transportation of the commodity, a uniform charge based upon the value of the property in excess of the specified maximum. Released Rate Rules—National Motor Freight Classification, Ex Parte No. MC–49, and Consolidated Freight Classification and Uniform Freight Classification, Ex Parte No. 197, 309 I.C.C. 380 (January 11, 1960).

This decision rests upon the interpretation placed by the Commission upon Section 20(11) of the Interstate Commerce Act. 49 U.S.C.A. § 20(11). Substantially, this section imposes liability upon a carrier for the full, actual loss or damage to property in transit, except baggage, despite any limitation of liability stipulated between the carrier and the shipper, unless or until this prevailing liability is modified by order of the Commission. This power of modification, as read by the Commission, does not enable it to issue a general order in moderation of the liability first declared in the statute. We disagree.

We do not say the Commission should have done so in these cases, but we say that the Commission could have, if the evidence justified it, approved the gener-

al rules of limitation of liability in controversy here.

As applicants in separate proceedings before the Commission, the plaintiffs in the two actions now before us sought authority under Section 20(11) to establish general rules restricting the application of all presently published ratings and rates to property the value of which had been declared or agreed by the shipper as not exceeding the amounts prescribed in the rules. Section 219 of the Act makes 20(11) applicable to motor carriers. 49 U.S.C. § 319. The amount fixed in respect to the railroads was $3 per pound, subject to a maximum of $200,000 per shipment. For the motor carriers the rule specified $3 per pound or $150 per package, whichever the greater, with a maximum of $100,000 per shipment. The requested rules excepted both ordinary livestock and articles for which specific ratings and rates were already based on actual or agreed value.

The further provisions of each rule are accurately summarized in the report of the Commission as follows:

"* * * (1) That when the declared or released value exceeds the above-stated amounts, there will be assessed, in addition to the basic applicable rate, a charge of 10 cents for each $100 or fraction thereof of excess value; (2) that the value declared in writing by the shipper or agreed upon in writing as the released value must be entered on the shipping order and bill of lading; (3) that in the absence of a certification that agreed or declared value exceeds the respective amounts stated above, the property shall be deemed to have a released value not exceeding those amounts, and the carriers' liability shall be limited to an amount not exceeding that value; and (4) that nothing shall restrict the right of the carrier to refuse shipments under rule 3 of the aforementioned classifications. * * *"

Rates dependent upon value and limitation of liability are known as released rates. The reason prompting the requests for the rules is the desire of the carriers for relief, by way of commensurate compensation, against claims for loss or injury to property of unusually high value. The plaintiffs example this need by citing electronic equipment, jet aircraft engines, atomic reactors, new methods of packaging and inflation of labor and material prices as causing enormous increases in the intrinsic value of ladings, and thus the enlargement of the claims for loss or damage. The generally accepted value of many familiar items, furthermore, has been greatly multiplied by scientific advances in their use and manufacture. "Steel tanks" may now be costly power units for nuclear submarines, "bolts" may be worth as much as $60 per pound. Yet, the carriers point out, their rates on this merchandise are still based on the ordinary appraisal of these units as they are commonly known.

Abridged, the statute upon which the plaintiffs rely for relief and the Commission for denial reads as follows:

"* * * any such common carrier * * * receiving property for transportation * * * or any common carrier * * * delivering said property * * * shall be liable * * * for the full actual loss, damage, or injury to such property caused by it or by any such common carrier, * * * notwithstanding any limitation of liability or limitation of the amount of recovery or representation or agreement as to value in any such receipt or bill of lading, or in any contract, rule, regulations, or in any tariff filed with the Interstate Commerce Commission; and any such limitation, without respect to the manner or form in which it is sought to be made is hereby declared to be unlawful and void; * * * *Provided,* however, That the provisions hereof respecting liability for full actual loss, damage or injury, * * *, shall not apply, first, to baggage * * *; second, to property, except ordinary livestock, received for transportation concerning which the carrier shall

have been or shall hereafter be expressly authorized or required by order of the Interstate Commerce Commission to establish and maintain rates dependent upon the value declared in writing by the shipper or agreed upon in writing as the released value of the property, * * * and the Commission is hereby empowered to make such order in cases where rates dependent upon and varying with declared or agreed values would, in its opinion, be just and reasonable under the circumstances and conditions surrounding the transportation. * * * "

Although much evidence was taken and extended hearings had before its Examiner, who found that the proposed rules had "not been shown to be just and reasonable", the Commission did not consider the question of their justness or reasonableness. Consistently, it put aside the evidence altogether, when it concluded it was powerless under the statute to grant a limitation of liability so general in effect. True, it prefaced this conclusion with the words "Under the circumstances here shown", but plainly it was then referring to the generality of the rules rather than to their equitableness. Report pp. 497, 498, 501; Report on Reconsideration p. 381.

The position of the Commission is that the dominating objective of the statute is to bar any constriction of a carrier's liability for the actual amount of any property loss or damage. The only variations allowable, says the Commission, are the three specific enumerations of the statute's proviso, that is, (1) baggage, (2) property which before the adoption of the statute had been granted a release rate by the Commission, and (3), to borrow the statute's wording,

"property * * * concerning which the carrier * * * shall hereafter be expressly authorized or required by order of the Interstate Commerce Commission to establish and maintain rates dependent upon the value declared in writing by the shipper or agreed upon in writing

as the released value of the property * * * "

The present applications are predicated on the quoted clause. The Commission is of opinion that this must be read as an exception to an adamant policy of full liability. Because of its place in context, the clause is said to be intended for chary use—that only in rare and special instances should this policy of the statute be suspended. This intendment of the Act is demonstrated, the Commission feels, by the restriction of the power of the Commission to "cases where rates dependent upon and varying with declared or agreed values, would, in its opinion, be just and reasonable under the circumstances surrounding the transportation * * * "

Upon this view the Commission has held the applications too broad and encompassing to come within this proviso of the statute. It apprehends the result would be to make the exception the rule. The Commission believed it could exercise this power only on petitions addressed to particular commodities or classes of freight.

But we think the phrasing of the statute does not sustain the Commission's reading of it. No direct prohibition of applications of the kind in suit is to be found in the statute. The Commission's self-restraint is dictated chiefly by the structure of Section 20(11). In this it notes that there is an untempered declaration of liability in the first part while the power of moderation is relegated to a proviso. But, we think, in proper perspective the statute bears no such inhibition. The power bestowed upon the Commission is not really an exception. It is a power reserved to the Commission, untrammeled save by the circumstances, to reexamine and readjust the carriers' answerability for commodities not already enjoying released rates. Its purpose is to give fluidity and flexibility to the entire subject of liability, circumscribing it only with the judgment of the Commission on the facts. The declaration of liability is merely an enunciation of the premise with which the Commission is to begin.

The Commission had no difficulty in concluding that the statute on its face excluded, from the initially stated liability, that freight which had previously been authorized by the Commission to move on value-rates even though of general application, such as express rates, later mentioned herein. But this "exception" is given no greater emphasis or importance in the statute than is the "exception" relating to property subsequently ordered to be put on released rates. Condensed, the Congressional intention is altogether clear, that, omitting baggage, the Commission is at liberty in the exercise of its reserved power, under justifying evidence, from time to time either to reduce the sweep of the statute's declaration of unlimited liability, by expanding the field of limitation, or to make a change so far-reaching as to eliminate one or the other entirely.

Although in practice it applies its rate powers upon property or classes thereof individually, the Commission is not forbidden in Section 20(11), as already noted, to issue a collective order, if justness, reasonableness, circumstances and conditions warrant. Assuredly, the pleadings of the applicants are not demurrable for an absence of these factors, for the allegations of convenience, expedition and other pertinent considerations outline a prima facie case for released rates. Indeed, as the carriers suggest, the compass of the requests may not prove to be so extensive in actuality as to make them undigestible under 20(11) for their magnitude, even assuming the statute does not permit a general order. Again, the tedium of presentation and determination incident to a commodity-by-commodity application for the rules suggests some merit to the procedure now followed.

The Commission is unduly discriminating in its distaste for general released rates. The history of the statute does not disclose that the Congress opposed any reasonable use of them. It has always been aware of their meaning, place and lawfulness. Before 1906 the Federal courts had upheld carrier-consignor agreements limiting liability and fixing it in reference to transportation charges. In that year the antecedent of Section 20(11) was enacted as the Carmack Amendment to the Interstate Commerce Act. 34 Stat. 584, 593. It provided that no agreement should stand to *exempt* a carrier from liability for the actual amount of any loss, damage or injury to a shipment caused by the carrier. But it was authoritatively held that the Carmack Amendment did not outlaw agreements for a liability less than actual loss, when based on carriage rates graduated according to declared or released valuations. Adams Express Co. v. Croninger, 1913, 226 U.S. 491, 509, 512, 33 S.Ct. 148, 57 L.Ed. 314.

At this juncture the express companies had permission from the Commission to operate upon general rates referable to value. Express Rates, Practices, Accounts, and Revenues, 24 I.C.C. 381 (1912). The railroads had such rates on a few things, but, generally, railroad rates were of two kinds: basic rates founded on an agreed notice of loss and method of computing actual value, and a higher rate if the consignor elected to hold the carrier to unconditioned liability for actual value. The first Cummins Amendment, as it is usually denominated, to the Interstate Commerce Act was passed March 4, 1915, apparently to dilute the Adams Express holding. 38 Stat. 1196. Excluding livestock, it banned all limitations of liability unless the goods were "hidden from view by wrapping" and the carrier "not notified" as to the nature of the goods. Only with those features existent could the Commission lawfully measure transportation rates upon the shipper's declared value of the property.

By the second Cummins Amendment, adopted August 9, 1916, these concealment and notification features were deleted. 39 Stat. 442. Baggage was removed from the prohibition against value-rates. Added was the proviso of Section 20(11) now in argument, as to past and future released rates. In brief,

the section was then, for our purposes, put in the form we have it now.

Epitomized, the legislative history of the released rates is this: in 1906 the Congress barred the total exemption of a carrier from liability; in 1915 the Congress tolerated released rates conditionally; in 1916 the Congress approved all released rates which had theretofore been allowed by the Commission, and left the whole problem thereafter to the discretion of the Commission.

Nor do we see a uniformity and consistency over the years of the Commission in its instant attitude. Rather, its regular practice has been to the contrary—to issue a general order, all quite appropriately, where the Commission deemed it just and reasonable. As examples: since the express companies' released rates were confirmed in 1917, in Express Rates, Practices, Accounts, and Revenues, 43 I.C.C. 510, the Commission has allowed a general limitation of liability to motor carriers of household goods; Rule 1 of Household Goods Carriers' Bureau Tariff No. 78-B, MF-I.C.C. No. 90 (1959); on freight of every kind, it permitted motor carriers in the surface hauls of joint motor-air or air-motor service to offer rates computed on liability; Order No. MC-423 of May 29, 1958, amended July 1, 1959, issued on Released Rates Application No. MC-679; and on June 17, 1960 "general commodities" with slight exceptions were authorized to be transported upon released rates by United Parcel Service, Inc. Released Rates Order No. MC-454, In the Matter of Application No. MC-736, as amended, under Sections 20(11) and 219 of the Interstate Commerce Act. Whatever the reason for these permits or authorizations, the fact is that they were general, comprehensive and not confined to particularized cases.

In sum, we think the Commission is not inhibited by Section 20(11), ex facie, to award a general order such as the plaintiffs respectively seek. They are entitled to have the reasonableness and justness of their applications adjudicated by the Commission. If the Commission,

upon substantial evidence and in accordance with the law, finds that it is or is not practicable or feasible to consider and pass upon the request of the applicants, for released rates, in the form of a general application or order, then the Commission would, of course, be warranted in allowing or refusing further consideration of the applications, as the case may be. If further consideration be allowed, then the applications would thereafter be judged on their merits as submitting reasonable and just rules. Our holding simply is that the statute neither absolutely forbids, nor absolutely compels, the Commission to authorize released orders on a general application and by a general order, rather than by a commodity-by-commodity or other piecemeal process—it is a determination to be made upon the law and evidence adduced.

A decree will be passed setting aside the Commission's dismissal orders and enjoining the Commission to take jurisdiction and pass upon the plaintiffs' applications according to its accepted practice and procedure.

Order Vacating Order of Commission.